UNITED STATES

v.

**Robert R. GARWOOD, 314 46 3268, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 81 1892.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 17 Feb. 1981.

Decided 29 July 1983.

LCDR Richard K. Delmar, JAGC, USNR, Appellate Defense Counsel.

John Lowe, Individual Defense Counsel.

CDR Richard A. Monteith, JAGC, USN, Appellate Government Counsel.

LT Darrell M. Grams, JAGC, USNR, Appellate Government Counsel.

Before EOFF, C.J., SANDERS, Senior Judge, and MAY, J.

MAY, Judge:

This case involves a highly publicized chain of circumstances set in motion by the disappearance of a 19 year old Marine from his unit, then stationed in the Republic of South Vietnam (RVN), on 28 September 1965. Almost 14 years later, following an encounter with a representative of the United Nations in a hotel cocktail lounge in North Vietnam, Private First Class Robert R. Garwood, age 33, was returned to U.S. military control.

The allegations and subsequent charges attendant to his period of absence in Vietnam resulted in a trial involving 92 trial days, litigated over a time period in excess of 11 months and producing 16 volumes of trial record and exhibits and containing 3,833 pages of trial transcript. It also involved the judicially permitted withdrawal of both initially appointed military defense counsel, the appointment of replacement associate military defense counsel, the subsequent dismissal by Private First Class Garwood of his initially retained civilian counsel, and the retention by Private First Class Garwood of new individual civilian counsel.

On 5 February 1981, Private First Class Garwood, contrary to his pleas, was convicted by general court-martial, officer members, of aiding enemy forces within prisoner of war camps in the Republic of South Vietnam, in violation of Article 104, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 904, and of assault of an American prisoner of war interned in an enemy prisoner of war camp, in violation of Article 128, UCMJ, 10 U.S.C. § 928. On 13 February 1981, Private First Class Garwood was sentenced to a dishonorable discharge from the naval service, forfeiture of all pay and allowances, and reduction to private, pay grade E-1.

The findings and sentence were approved on review below.

Appellant now assigns eight errors, none of which we find meritorious. Four of these assignments, however, warrant discussion.

I

THE MILITARY JUDGE ERRED IN REFUSING TO RECUSE HIMSELF AND REFUSING TO DECLARE A MISTRIAL AS A RESULT OF JUDICIAL MISCONDUCT.

II

THE PROSECUTION OF PFC GARWOOD, IN VIOLATION OF GOVERNMENTAL POLICY NOT TO PROSECUTE PRISONERS OF WAR WHO HAD VIOLATED THE UCMJ, CONSTITUTED SELECTIVE PROSECUTION, AND THEREFORE DENIED PFC GAR-

WOOD DUE PROCESS OF LAW AND THE EQUAL PROTECTION OF THE LAWS, GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

V

APPELLANT WAS DENIED AN EFFECTIVE PSYCHIATRIC EVALUATION, IN VIOLATION OF ARTICLE 121 OF THE MANUAL OF [SIC] COURT–MARTIAL.

VII

THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO DISCOVERY OF EXCULPATORY EVIDENCE, WHICH DEFENSE REQUESTED UNDER *BRADY V. MARYLAND.*

In addressing these assignments of error, it is necessary to provide the significant factual background of this case as extracted from the record:

*Factual background*

Appellant was a 19 year old Marine private first class stationed near Da Nang, RVN, in 1965. At that time appellant was a member of Service Company, Headquarters Battalion, Third Marine Division. As a driver in his motor transport platoon he was dispatched on the evening of 28 September 1965 to pick up an officer scheduled to depart Vietnam on emergency leave. The location of the officer was apparently at some distance from appellant's command compound outside Da Nang. Private First Class Garwood was last seen by those in authority within his unit at approximately 1800, 28 September 1965.

Almost fourteen years later, a representative of a United Nations delegation visiting the Socialist Republic of Vietnam was passed a note from appellant while sitting in a hotel lounge. That note advised the delegate of appellant's Marine Corps identity. This communication culminated in the return of appellant to United States military control on 22 March 1979.

Although appellant's official return to U.S. control occurred on the above date, his presence within the prisoner of war camp network in South Vietnam was apparently known or suspected by U.S. authorities within weeks of his disappearance, based initially on routine intelligence reports and later, on information supplied by repatriated American servicemen who had been prisoners of war in camps located in South Vietnam.

Subsequent to appellant's return to U.S. Military control, he was assigned for duty at Marine Corps Base, Camp Lejeune, North Carolina. Prior and subsequent to his return, government criminal investigative agencies were evaluating allegations of possible criminal offenses committed by appellant following his disappearance from his unit. Following a pretrial investigation ordered by the Commanding General Marine Corps Base, Camp Lejeune, North Carolina, in accordance with Article 32, UCMJ, appellant was charged with desertion, in violation of Article 85, UCMJ, 10 U.S.C. § 885; solicitation of U.S. troops in the field to refuse to fight and to defect, in violation of Article 82, UCMJ, 10 U.S.C. § 882; communication and holding intercourse with the enemy, in violation of Article 104, UCMJ; and misconduct as a prisoner of war, in violation of Article 105, 10 U.S.C. § 905, UCMJ. We hasten to emphasize that, following presentation of the case in chief, the military judge in this case granted appellant's motion for findings of not guilty, in regards to the desertion and solicitation charges, and one specification of the maltreatment charge. The members, in arriving at their findings regarding the remaining charges, found appellant guilty of the holding intercourse and communication with the enemy charge and not guilty of the remaining maltreatment specification, but guilty of assault.

The charges in this case essentially involved *allegations* that, subsequent to his disappearance from his unit in September 1965, appellant had, in various enemy prisoner of war camps in South Vietnam, during the period 1967–1969, elected to communicate with and hold intercourse with ene-

my military forces. The specific activities alleged against appellant involved acting as an interpreter during political indoctrination classes given to American prisoners by enemy personnel; acting as an informer to enemy captors regarding prohibited activities of American prisoners; serving as an interrogator of American prisoners upon their initial entry into the camps; serving as an indoctrinator and discussion leader of American prisoners of war and encouraging prisoners to accede to communist ideology as presented by their captors in exchange for moderation of treatment and early release; and serving as an armed escort over prisoners of war. Appellant was further charged with assault of an American prisoner of war following an incident in which an enemy camp commander's cat had been killed for food by American prisoners of war.

The government's evidence in its case in chief consisted essentially of the testimony of former American prisoners of war, all present or former U.S. Army personnel, and one former South Vietnamese Marine officer, all of whom allegedly were interned in prisoner of war camps in RVN and who testified as to appellant's activities during their periods of internment.

Following presentation of the government's case in chief, appellant offered into evidence extensive psychiatric testimony. This testimony involved the concepts of "coercive persuasion," "atypical dissociative reaction," and "post-traumatic stress syndrome." In essence, the expert witnesses presented by appellant contended that, based on their evaluations, appellant had been the victim of levels of torture and brutality during his initial period of incarceration by the enemy sufficient to coercively cause him to adopt an identity totally separate and apart from his conscious, controlling state of mind, and that this separate identity or "dissociative reaction" made it physically possible for the alleged offenses to have been committed by him without the requisite linkage to the necessary perceptive and controlling faculties required under the principles of mental responsibility contained in *United States v.*

*Frederick,* 3 M.J. 230 (C.M.A.1977). In short, appellant's psychiatric evidence characterized appellant as suffering from a mental disease at the time of the alleged offenses which rendered him not responsible under the principles of *Frederick.* This evidence also was offered in support of a contention of partial impairment of his perceiving and controlling faculties in relation to those alleged offenses which involved specific intent or knowledge as requisite elements of proof.

In rebuttal, the government presented testimony by three Navy psychiatrists who testified generally that, in their opinion, appellant suffered from a "dysthymic disorder" which impacted as "mild to moderate depression." These government psychiatrists also opined that appellant possessed an "avoidant personality." The Navy psychiatrists testified that they found no atypical dissociative disorder symptoms and that they found appellant, at the time of the alleged offenses, possessed the mental capacity to appreciate the criminality of his actions and to conform his conduct to the requirements of the law. *Frederick, supra.* In short, the government's psychiatric evidence characterized appellant as mentally responsible at the time of the alleged offenses.

■ We do not intend, by the above summation, to simplistically assign the respective contentions of appellant and the government in this case to convenient states of psychiatric equilibrium. On the contrary, the psychiatric evidence encompassed over 600 pages of the trial record for presentation, cross-examination and redirect examination of the defense psychiatric witnesses, and over 150 pages of the trial record for presentation, cross-examination and redirect examination of government psychiatric witnesses. We find, however, from our examination of the record, sufficient evidence to sustain the members apparent rejection of Private First Class Garwood's insanity defense. We will now address Assignments of Error I, II, V, and VII.

## I

### THE MILITARY JUDGE ERRED IN REFUSING TO RECUSE HIMSELF AND REFUSING TO DECLARE A MISTRIAL AS A RESULT OF JUDICIAL MISCONDUCT.

█ On the first day of the 92 days of trial, during preliminary proceedings of this case, the trial judge issued a written judicial order, "Order on Courtroom Procedures and Publicity," a portion of which we find relevant here:

8. All witnesses, persons subpoenaed to court, court-members and those persons appointed but excused from serving as members, as well as all persons selected as potential court-members, are forbidden to participate in interviews for publicity and from making any extrajudicial statements about the case from this date and until such time as a verdict in this case is returned in open court. Nothing in this order· shall prohibit any witness from discussing any matter in connection with the case with any of the counsel or the accused or any representative of such counsel.

9. Extrajudicial statements by any counsel, witness, or any one party, directly or indirectly for either side, is hereby prohibited. No release to any of the news media may be made of any leads, information or gossip by government officials, witnesses, or counsel for either side or their agents and employees. Nothing herein contained is intended to prohibit interviews for publicity so long as extrajudicial statements about the case are not made.

The above two extracted paragraphs as well as the rest of the judicial order represented a well-drafted and comprehensive judicial directive. The trial judge, Judge Switzer, had obviously appreciated the problems of publicity and media demands for information ranged against the rights of appellant and the necessity for a fair trial inherent in this case from the day the alleged charges were subjected to formal pretrial investigation.

From our examination of the record, we find the trial judge's decision to issue the restrictive order to be justified.

He had properly, and with adequate justification, taken judicial notice in his restrictive order of the extensive media publicity related to this case. This order was an obvious and proper response to the clash between the public's right to information, the press's access to the trial proceedings, and Private First Class Garwood's right to a fair trial. We find that this restrictive order was a proper response to the "reasonable likelihood" that pretrial and trial publicity could have interfered with a fair trial. See Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966); United States v. Tijerina, 412 F.2d 661, 666–67 (10th Cir.1969), cert. denied, 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969).

█ During the period December 1980—February 1981, however, the trial judge engaged in a number of press and media interviews involving both local media representatives as well as correspondents from national television networks.

The settings for the judge's remarks apparently ranged from comments on the case delivered in an interview outside the courtroom, to his appearance, in interviews on a CBS evening television news program, ABC news "Nighttime" program, and individual interviews with correspondents from the national television networks and the Associated Press. The content of his remarks involved the expression of his opinion regarding tactical decisions by the appellant's defense team; the relevancy of certain defense discovery items; comments, delivered to the media, which could be interpreted as disparaging the testimony of one of appellant's psychiatrists; and opinions expressing the view that appellant should take the stand and testify regarding the charges.

On 15 January 1981, appellant's chief civilian counsel moved for dismissal of charges, or alternatively, recusal of the military judge. Appellant's counsel also requested an evidentiary hearing to apparently present testimony of media representatives regarding the public statements of the

trial judge. In addition, appellant's counsel desired to present evidence on the concept of "subliminal perception" and the asserted potential for transmittal of the judge's remarks to court members via unconscious reception of third party conversations, news broadcasts, and service club or other social discussions which would refer to the judge's remarks.

Judge Switzer denied defense motions to dismiss or to recuse himself, and denied the defense challenge based upon judicial misconduct. Appellant's counsel also asked for sequestration of the court members. This motion was also denied. Later in the trial, following closing arguments on the findings, appellant's counsel again challenged the trial judge for cause, asserting bias against appellant and judicial misconduct. Appellant's counsel again moved for an evidentiary hearing to present testimony and evidence on the concept of subliminal perception. This motion was also denied by the trial judge. Trial resumed and was carried through to conclusion.

We find inexcusable the decision by the trial judge here to involve himself in the clearly predictable media interest and inquiry in this case. The Canons of Judicial Conduct certainly explicitly bar such behavior:

> A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the *procedures* of the court. Canon 3 A(6). (emphasis added)

Judge Switzer, an experienced trial judge, was perhaps well-motivated in his desire to "inform" the press and public regarding a highly publicized trial, a trial involving all the complexities of old political issues, national policies in an unpopular war, and the adequate protection of appellant's right to a fair trial on the charges, under the law.

We can certainly discern from the record Judge Switzer's apparent motivation for his decisions to grant press and visual media interviews:

> Now, again, I recognize that judges ought to not talk about a case in proceeding but ... or that is pending; however, I have tried to be available to all members of the media as well as either side for that matter, to try to explain the military law or my rationale and reason for ruling.

Regardless of the trial judge's motivation for his or her decision to provide access to press representation, the press does not carry the responsibility borne by the trial judge to insure that a fair and impartial trial is conducted. There is very simply, no justification or excuse which can be raised in defense of the judge's violation of his own directive. If he did not intend that his directive barring all press and media interviews should apply to himself, then he should have certainly explained his interpretation and intentions on the record to provide an opportunity for counsel of both sides to raise appropriate concerns. While the accused and his counsel are understandably concerned in the conduct of appropriate trial proceedings within statutory and constitutional safeguards, trial counsel must also be constantly aware of potential dangers to the validity and lawful tenor of the trial proceedings.

Appellant now assigns error, contending that the trial judge's conduct violated the Canons of Judicial Conduct, that the potential for unconscious, "subliminal" perceptions by the court-members of the trial judge's extrajudicial comments and opinions irretrievably tainted the proceedings in the case, and that the circumstances therefore mandate reversal of the findings and sentence and dismissal of the charges.

We have extensively examined the trial record and the detailed *voir dire* conducted at significant stages of the trial, particularly that conducted following defense addressal of the publicized comments of the trial judge.

We have examined appellant's extensive brief, the affidavit of a proffered psychiatrist regarding the concept of "subliminal perceptions," and we have considered appellant's civilian and military counsel's oral argument on this issue.

We find that the trial judge here clearly erred in engaging in such ill-considered publicity statements. Although we express our upmost disapproval of Judge Switzer's proclivities toward media activity, we do not thereby end our assessment.

We first find no indication, in either the trial record proffers of expected evidence by appellant's counsel, or in his appellate assertions, of the slightest deterioration of the necessary formality and decorum mandated for courts-martial under the Code. On the contrary, we find that the trial judge maintained continual and necessary control throughout the extensively publicized proceedings and that none of the obvious media interest was allowed to intrude upon, or detract from, the trial itself.

More importantly, we find, after examining the extensive *voir dire* of the court members; their candid responses regarding attempts by press representatives to interview them; their rebuffs of such attempts; their adamant statements denying both any knowledge or contact with press, radio, or television reports of the case throughout their period of appointment to the court and their denial of any individual, social, or other contact or discussions regarding the case, no indication of prejudicial impact on the members of the court.

Contentions of the possibility of "subliminal perception" unconsciously impacting on the thought processes of the court members are not, after considering all the evidentiary proffers of appellant's counsel, sufficiently persuasive. The concept does not possess adequate scientific foundation, in our view, under the circumstances of this case, and we do not agree that subliminal perception as "a well-documented phenomenon" is relevant to this case. We find no reason to disbelieve the forthright assertions of the court members that they scrupulously observed the judge's standing order to avoid all discussion, contact with, or proximity to news reports, conversations, or press notices regarding the case. We specifically reject appellant's counsel's "proffer" that a media representative supposedly overheard a junior officer, who was not a court member, expressing negative opinions about appellant in the base officer's club within close physical proximity to several of the court members. We are instead persuaded by the statements of the members on the trial record during *voir dire* examinations, subsequent to this alleged event, and find no basis for the assertion of prejudicial impact upon appellant or the trial process.

We also reject appellant's counsel's contention at trial and now, that the trial judge's extrajudicial comments reflected any bias or predilection against appellant. We certainly find no indication of bias in the trial record. Finally, we are not persuaded by appellant's latest alternative contention that, in the event we reject the concept of subliminal perception, reversal is mandated to "protect the rights of future defendants and to protect the military itself against accusations of bias." This Court has stood and will always stand ready to carry out its statutory responsibilities and to protect the rights of defendants appearing before courts-martial of the naval service. In regards to concerns about "protecting" the military services from bias charges, we find no statutory, case law or appellate review concepts which elevate appellant's assumed well intentioned concerns to legitimate considerations for this Court.

We, therefore, find no merit in this assignment and find that the trial judge did not abuse his discretion in his denial of defense motions for mistrial and challenge for cause against the military judge.

II

THE PROSECUTION OF PFC GARWOOD, IN VIOLATION OF GOVERNMENTAL POLICY NOT TO PROSECUTE PRISONERS OF WAR WHO HAD VIOLATED THE UCMJ, CONSTI-

TUTED SELECTIVE PROSECUTION, AND THEREFORE DENIED PFC GARWOOD DUE PROCESS OF LAW AND THE EQUAL PROTECTION OF THE LAWS, GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Appellant now renews his contention, raised initially at the trial level in a motion to dismiss, that his prosecution was in violation of his Fifth Amendment due process rights. Appellant persuasively founds his position on principles presented in *Yick Wo v. Hopkins,* 188 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and subsequent case law which essentially bars the prosecution of persons under federal, state, or local law when such prosecutorial decision is based upon illegal discrimination between persons similarly liable for their alleged criminal conduct.

Appellant correctly does not assert the application of de jure statutes whose discriminatory purpose is self-evident. On the contrary, the Code violations here clearly present nondiscriminatory statutory proscriptions against criminal conduct by all persons subject to the Uniform Code of Military Justice.

While appellant asserts properly his Fifth Amendment due process rights on this issue, the principles of equal protection generally expressed in state and local law applications is applicable under similar circumstances and concomitant with due process concepts when federal executive power is at issue. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

### Prima Facie Threshold

Appellant presents on his behalf extensive documentation of named members of the U.S. armed forces who were suspected of offenses during the Vietnam conflict, supposedly similar in degree to his own charges, and who were not prosecuted under the court-martial process applied to him. Appellant presents extensive documentation of Defense Department and Navy Department directives and memoranda which present departmental views that

those prisoners of war who were returned during the celebrated 1973 "Homecoming" repatriation would not be prosecuted for "propaganda statements" made while in captivity.

There is additional documentation in the form of news reports of statements made by Department of Defense officials, including two Secretaries of Defense. Memorandums from the Secretary of the Navy and the Judge Advocate General of the Navy are offered to support appellant's further contentions that specific decisions were made not to prosecute named members of the naval service, including a senior officer in the Navy, and a senior officer in the Marine Corps, as well as two Marine noncommissioned officers. These servicemen had been the subject of specific charges by other former prisoners of war held in North Vietnam. The charges alleged against the two naval service officers involved allegations of communication and cooperation with the enemy, making of propaganda statements, inducing of insubordination by their fellow prisoners against senior U.S. officers interned in the camp, and informing on fellow prisoners of war. The charges alleged against the two Marine noncommissioned officers involved allegations of making propaganda statements, communication with the enemy, disobeying orders, and acceptance of favors from the enemy. Certainly Private First Class Garwood has presented extensive evidence of other former prisoners of war who were allegedly violators of the Code while in captivity. More is required, however, when asserting that one has been "selectively prosecuted."

█ We first note that bare contentions that others were similarly liable due to criminal activity, but not prosecuted, are insufficient to bar good faith prosecutions. *Cf. United States v. Rickenbacker,* 309 F.2d 462 (2d Cir.1962) (defendant was properly convicted of refusing to complete and submit housing census questionnaire although he established that, although other persons had also refused to submit form, he was only person prosecuted); *United States v.*

*Elliott,* 266 F.Supp. 318 (S.D.N.Y.1967) (motion to dismiss conspiracy indictment properly denied even though defendant established that no other person had ever been charged with violation of a statute enacted in 1917). "Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection." *Moss v. Hornig,* 314 F.2d 89, 92 (2d Cir.1963).

 In the face of contentions of selective prosecutions, there is a general presumption that criminal charges and prosecutions are undertaken in good faith and with nondiscriminatory motivation. *United States v. Falk,* 479 F.2d 616 (7th Cir.1973). The two-prong test of the *prima facie,* selective prosecution defense is: (1) that others similarly situated have not been prosecuted for similar conduct and (2) that the government's decision to prosecute was based on impermissible grounds, such as race, religion, or other arbitrary classification. *United States v. Berrios,* 501 F.2d 1207 (2d Cir.1974). At this point, we are unable to discern a material basis asserted by appellant regarding the second prong, i.e. impermissible or arbitrary classification. However, given the unique nature of this case, we are inclined to grant appellant the achievement of a *prima facie* threshold for resolution of this issue. We are motivated in this regard by appellant's evidentiary submissions and an equitable desire to insure adequate addressal of this obvious issue.

Achievement of the *prima facie threshold,* however, does not represent meritorious resolution of appellant's assignment. The next level of inquiry is necessarily directed at the burden of proof necessary to sustain his dismissal motion, and upon whom does that burden of persuasion lie.

### Burden of Proof

 The *Manual for Courts-Martial, 1969 (Rev.)* (MCM), is explicit in its assignment of the requisite burden when motions or defenses are raised in a bar to trial. The burden is upon the accused at trial with certain exceptions, such as insanity and statute of limitations issues, to support, by a preponderance of evidence, a motion asserting a defense or bar to trial. Paragraph 67e, MCM.

In the area of selective prosecution litigation, however, federal case law provides more specific analytical focus. When the circumstances of the case and, specifically, when curtailment or infringement of constitutionally-protected activity is involved, the burden of persuasion understandably shifts. *United States v. Falk, supra; United States v. Crowthers,* 456 F.2d 1074 (4th Cir.1972). Both of these cases involved the exercise of First Amendment rights. In *Falk,* the defendant was involved in anti-war activism and the counseling of persons desiring to evade military service during the Vietnam War period. The defendant established that these activities were protected by the First Amendment; that the indictment against him was approved in sequence by the Chief of the Criminal Division in the local U.S. Attorney's office; the United States Attorney, and finally by the Department of Justice in Washington, D.C. The defendant further established that a questionable delay was involved in bringing the indictment against him, with the motivation apparently linked to anti-war activities. In *Crowthers,* members of a religious group had been arrested for conducting a "Mass of Peace" on the Pentagon concourse and for distributing leaflets and handbills. In each case it was held that when such constitutionally-protected activity related to First Amendment rights is involved and the *prima facie* threshold is achieved by the accused's evidentiary offers of selective prosecution, the burden then clearly shifts to the government to establish by a "compelling evidence" standard that it has prosecuted without invidious or unlawful discrimination. *Falk, supra* at 624; *Crowthers, supra,* at 1080.

### Was appellant here the subject of arbitrary or unlawful classification?

We note examples of assertions of "arbitrary classifications" which have been rejected: *United States v. Ojala,* 544 F.2d 940 (8th Cir.1976); *United States v. Peskin,* 527

F.2d 71 (7th Cir.1975), "political prominence" and public violations of law held permissible basis of government's decision to prosecute; *United States v. Sacco,* 428 F.2d 264 (9th Cir.1970), suspicions of extensive, general organized crime activity was a permissible basis for related prosecution of specific offenses. *See also United States v. Schullo,* 390 F.Supp. 1067 (D.Minn.1975), "general criminal activity" not an arbitrary classification; *United States v. Malinowski,* 347 F.Supp. 347 (E.D.Pa.1972), prosecution of war tax resistance league member not based on any general government "policy" or politically motivated.

■ It is evident, in our view, that the motivations encompassed within the term "arbitrary classifications" are those categories sufficiently recognizable or objectively linked to those constitutional guarantees inherent in the protections accorded members of racial and religious groups, or those traditionally granted the mantle of judicial protection, as in First Amendment applications.

■ Appellant presently contends that the very fact that he was prosecuted and others suspected of similar offenses were not, is sufficient to render the prosecutorial decision, in and of itself, irrational and arbitrary. We do not dispute the principle proffered by appellant that a decision to prosecute criminal charges must rest upon an objective standard of reasonableness. We turn then to an inquiry regarding the similarity of the charges in this case and those of other servicemen cited by appellant.

The specific circumstances of this case are an appropriate reference point to determine the extent, if any, of arbitrariness, or unlawful classification here. To examine the government's actions, we do not view, as does appellant, the charges as they stood at the *conclusion* of trial. The inquiry as to the preliminary power of the government to bring to bear its prosecutorial authority must, of necessity, be focused on the initial stance of the case and the original substance of criminal allegations from which the decision to prosecute flowed.

Whether the appellant now stands convicted only of communication and intercourse with the enemy and simple assault is, contrary to appellant's counsel's assertions, irrelevant to the issue of selective prosecution. The appropriate point of inquiry is the date the convening authority acted to refer the charges to trial, 13 February 1980, for that is the date at which point the government was invested with the power to formally prosecute appellant. *See* Articles 17, 18, and 22, UCMJ, 10 U.S.C. §§ 817, 818, 822.

At that point in time, from our examination of the record, the appellant, in compliance with Article 30 of the Code, 10 U.S.C. § 830, had been *charged* with:

Violation of Article 82: Solicitation of U.S. forces at fire support bases, I Corps area, Republic of Vietnam, to throw down their arms and to refuse to fight, as well as appealing to U.S. forces in the field to defect to the enemy.

Violation of Article 85: Desertion in time of war from 28 September 1965 until 22 March 1979.

Violation of Article 104: Aiding the enemy by serving as interpreter, interrogator and indoctrinator in enemy prisoner of war camps; soliciting American prisoners of war to defect to the enemy cause, and serving as a guard over prisoners in enemy prisoner of war camps.

Violation of Article 105. Maltreatment of two American Prisoners of war by physical and verbal abuse, respectively.

We specifically emphasize that appellant was only convicted of the Article 104 aiding the enemy charge and Article 128 assault. (The military judge granted a motion for a finding of not guilty as to the Article 82 and Article 85 charges and one specification alleging verbal maltreatment under Article 105.)

However, in evaluating the government's prosecutorial decision in this case, it is evident that the *alleged charges* represented offenses of substantial and grave magnitude at the time of their preferral and were

sufficiently distinguishable from the cases of other servicemen cited by appellant.

The charges, following compliance with Articles 32 and 34, 10 U.S.C. § 834, of the Code, were referred to trial by the Commanding General, Marine Corps Base, Camp Lejeune, North Carolina, the general court-martial convening authority over the command to which appellant was assigned upon his return to U.S. military control. There is not the slightest indication in the trial record and accompanying documentation that the convening authority acted at the behest, suggestion, or command, of any other higher or related authority. Nor is there any indication that the convening authority, in rendering his referral decision, utilized any invidious purpose, vindictive intent, or arbitrary categorization or classification in referring this case to trial by general court-martial.

We find, therefore, that the circumstances of this case, as related to the charged offenses, are clearly distinguishable from the obvious circumstances related to First Amendment activities or activities of traditional constitutional priority.

Appellant surely will not be heard to assert that the decision to prosecute him on the above sworn charges and violations of the UCMJ was in any way an act infringing upon constitutionally-protected activity on his part.

### Ruling on motion to dismiss due to 'selective prosecution'

First, we find on rational basis grounds, that the decision to prosecute appellant was not arbitrary, nor was that decision motivated by unlawful or impermissible classifications.

Second, in applying the "preponderance of evidence burden" prescribed in paragraph 67e, *MCM*, we find that appellant has not established by a preponderance of the evidence that the government has selectively prosecuted him in violation of his Fifth Amendment due process rights.

However, we have also considered appellant's contention that other members of the armed forces of this nation, some significantly senior in rank and experience, while subject to the Code, allegedly committed offenses similar to those of which he was *convicted* and who were not the subject of court-martial action.

This presents, in our view, a possible constitutional issue of basic fairness or specific due process, which arguably rises to the plane occupied by the First Amendment issues held to merit a shifting of the burden of persuasion in the *Falk* and *Crowthers* cases.

We, therefore, have also applied, in the interest of justice, the higher "compelling evidence" burden to the evidence offered by the government on this motion and we find that the government sufficiently established, under a "compelling evidence" standard, that it prosecuted appellant without unlawful discriminating purpose and without violation of appellant's due process rights.

We, therefore, find this assignment to be without sufficient merit.

V

### APPELLANT WAS DENIED AN EFFECTIVE PSYCHIATRIC EVALUATION, IN VIOLATION OF ARTICLE 121 OF THE MANUAL OF [SIC] COURT–MARTIAL.

We have examined the approximately 140 pages of the trial transcript which contained the extensive examination by both sides of the government psychiatrists who served on the Article 121 Board. We find specifically from our examination of the record:

1. That Private First Class Garwood was not inhibited in any material aspect by the giving of Article 31, UCMJ, 10 U.S.C. § 831, rights by each of the Navy psychiatrists who conducted individual psychiatric interviews of him. The extensive character of the responses attributed to Private First Class Garwood, following an understandable period of adjustment and establishment of communication, refutes appellant's counsel's contentions that the requirement to

give Article 31 rights, as contained on the trial judge's order, "chilled" the responses of Private First Class Garwood during these psychiatric interviews.

2. That the Navy psychiatrists who conducted the 121 Board evaluation were sufficiently experienced and trained in the field of psychiatry. Appellant's asserted desire to have members appointed to the Board "with expertise in evaluating the defense of coercive persuasion" rests on no known authority. On the contrary, we find sufficient compliance with paragraph 121, *MCM*. We note that the Manual requires only one member of the board to be a psychiatrist. Here, each of the members was a psychiatrist, each had some experience in specific psychiatric examination of former prisoners of war, and each member spent approximately eight hours in interviewing Private First Class Garwood over a period of three days, for an approximate total of 27 hours of psychiatric examination further reinforced by psychological testing.

From our examination of the record, each of the Navy psychiatrists was, in our view, sufficiently conversant with the concept of "coercive persuasion" to reasonably evaluate and render a professionally competent opinion thereon. While we appreciate appellant's desire to have members possessing an interest and specific "expertise" in a psychiatric area consonant with his specific mental defense, such desire cannot be elevated to a mandatory qualification. *United States v. McGhee,* 36 C.M.R. 785, 794 (N.B. R.1966).

We, therefore, reject this assignment of error.

## VII

THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO DISCOVERY OF EXCULPATORY EVIDENCE, WHICH DEFENSE REQUESTED UNDER *BRADY V. MARYLAND.*

■ We very simply, after examining the entire transcript of proceedings which encompassed a time period of 11 months, and reflected adequate, extensive, and rea-

sonable responses to discovery requests submitted by appellant's counsel, find no merit to the present contention by appellant's counsel that he was denied adequate discovery of relevant or potentially relevant evidence. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

We specifically find no abuse of discretion in the trial judge's decisions limiting defense discovery to that provided and now contained in the trial record.

### Court's Action on the Findings and Sentence Below

After our examination of this record, the comments of Private First Class Garwood's defense counsel in his response to the staff judge advocate's review, the assignments of error, and the government's reply thereto, we conclude that the findings are correct in law and fact and that no error materially prejudicial to the substantial rights of appellant was committed. Accordingly, the findings and sentence, as approved on review below, are affirmed.

Chief Judge EOFF and Judge SANDERS concur.