**UNITED STATES**

v.

**Airman First Class Craig A. DAWDY, FR 489–74–9165 United States Air Force.**

**ACM S26060.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 April 1983.

Decided 27 Oct. 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Bruce T. Brown.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Captain Kevin L. Daugherty and Major Thomas O. Maser, USAFR.

Before KASTL, RAICHLE and SNYDER, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Important signals for military judges and trial and defense counsel arise in this case. Here, the accused claims that the military judge erred in denying a defense challenge for cause against Lieutenant Colonel Delaney, the court president.[1] On the particular facts, we disagree; however, we pause to sound a note of caution in this general area.

At trial, the precise defense challenge against Colonel Delaney centered on three areas: (a) his neutrality as a juror; (b) his disposition on sentencing; and (c) his views as to the weight to be accorded testimony of Office of Special Investigations (OSI) personnel. The relevant questioning at trial pertaining to each category follows.

*Neutrality as a juror.* During preliminary voir dire, this colloquy occurred between the military judge and Colonel Delaney:

MJ: Is any member of the court aware of any other matter which he or she believes might be grounds for challenge by either side against you?

---

1. The accused was found guilty, in accordance with his pleas, of nine marijuana-related offenses, in violation of Article 134, U.C.M.J., 10 U.S.C. § 934. His sentence in a special court-martial with members, was a bad conduct discharge and reduction to airman basic.

MEM: (Colonel Delaney was shaking his head affirmatively)

MJ: Colonel Delaney?

MEM: (Colonel Delaney): Yes, Your Honor.

MJ: Very well. I think I'll allow counsel to go into their voir dire of the court then we'll have an individual voir dire of you, sir.

\* \* \* \* \* \*

[After the members had departed, during individual voir dire]:

MJ: The members have withdrawn from the courtroom. I believe you said that you had some knowledge of the case?

MEM: (Colonel Delaney): No, sir. Your Honor, I did not say knowledge of the case.

MJ: Very well. What do you think might disqualify you?

MEM: (Colonel Delaney): I've been a narcotics investigator for a long time now in the OSI.

MJ: You think that could so slant your viewpoint of this case and this accused that you could not sit impartially and evaluate what would be an appropriate sentence?

MEM: (Colonel Delaney): I don't know if my viewpoint would be the same as the other members of the court, Your Honor.

\* \* \* \* \* \*

MJ: How long has it been since you served as a narcotics investigator, Colonel?

MEM: (Colonel Delaney): Three years.

\* \* \* \* \* \*

MJ: For how long did you serve as a narcotics investigator?

MEM: (Colonel Delaney): On and off, ten or twelve years.

MJ: So it would have been a fairly substantial portion of your career that you spent in the OSI?

MEM: (Colonel Delaney): That's correct.

MJ: I assume you did a number of drug investigations?

MEM: (Colonel Delaney): A large number.

*Disposition on sentencing.* Four general matters can be found under this umbrella. First, Colonel Delaney was asked if he would agree that the government could save time, money, and effort when an accused pleaded guilty. He responded, "I'd say it's possible." (R. 31). Second, after some initial hesitation, Colonel Delaney readily accepted the judge's guidance that a guilty plea was properly a matter to be considered in mitigation. Third, Colonel Delaney stated that he could *not* consider imposing "no punishment" in the case. Fourth, concerning whether the president had a presumption as to the appropriate type of punishment, the following occurred:

MJ: Well, at this point, do you feel that any particular form of punishment would be mandatory, and are you unalterable in that position?

MEM: (Colonel Delaney): Negative. I do not feel that any type punishment is unauthorized.

MJ: So, do you think you could consider at this point not confining this accused? I'm not saying that that would be the end result, but you could consider it?

MEM: (Colonel Delaney): I could consider it.

MJ: Could you consider not imposing a punitive discharge?

MEM: (Colonel Delaney): I could consider it.

\* \* \* \* \* \*

DC: Now, you said you had some preconceived ideas about the type of punishment that was appropriate in this case. Would you please tell me what your preconceived idea is?

MEM: (Colonel Delaney): Not in terms of the type of punishment. In looking at the specifications, I would have a preconceived idea of what in fact happened.

DC: But my question was, do you have any preconceived ideas about the type of punishment that might be appropriate?

MEM: (Colonel Delaney): No, no, not really.

\* \* \* \* \* \*

DC: Based on offenses of this general nature, do you feel that a bad conduct discharge would be appropriate, without knowing anything further?

MEM: (Colonel Delaney): No.

*Weight to be accorded OSI investigator testimony.* As to this matter, the following data is relevant:

DC: There is probably going to be at least one, maybe two witnesses who are closely involved with the OSI. Would you tend to give their testimony more credibility than you would other witnesses?

MEM: (Colonel Delaney): I would.

\* \* \* \* \* \*

MJ: Colonel Delaney, you said you would probably be inclined to believe OSI agents as opposed to possible other witnesses. Would that be because they are trained as observers and trained as investigators?

MEM: (Colonel Delaney): Yes.

MJ: Would there be other reasons why you would tend to believe them?

MEM: (Colonel Delaney): Certainly, Your Honor.

MJ: What are they?

MEM: (Colonel Delaney): Personal experience and belief in them.

**2.** Dissenting, Chief Judge Everett applauded the "ably stated" exposition of the subject authored by Judge Mahoney of this Court in *United States v. Harris,* 11 M.J. 589, 592 (A.F.C.M.R.1981) (Mahoney, J., dissenting). *See United States v. Harris,* 13 M.J. 288, 294 (C.M.A.1982).

**3.** Because of our disposition under *United States v. Harris, supra,* we need not squarely face the merits of the defense challenge. As for law enforcement officials sitting as court members or the problem of members giving greater weight to investigators than to other witnesses, *see United States v. Tomchek,* 4 M.J. 66, 69 (C.M.A.1977); *see generally Chavez v. United States,* 258 F.2d 816 (10th Cir.1958). Regarding a guilty plea as a matter in mitiga-

### The Harris Issue

At the outset, we note that this accused ultimately exercised his peremptory challenge against Colonel Delaney. That precludes any possibility of prejudice—accordingly, we find that the accused was sentenced by a fair, impartial court-martial. *United States v. Harris,* 13 M.J. 288 (C.M.A. 1982).

The *Harris* decision, with separate opinions by the three judges of the Court of Military Appeals, reveals the numerous legal landmines in the area. Moreover, the dissent of Chief Judge Everett cogently states the dilemma in forcing the defense to use its one peremptory challenge when a challenge for cause ought to have been granted.[2]

Whatever the philosophical reservations about the "forced use" of the peremptory challenge, *Harris* is governing. Ergo, the challenge of Colonel Delaney is *not* preserved for appellate review. In so stating, we part company with our Army brethren who imply a contrary reading in *United States v. Davenport,* 14 M.J. 547, 549–550 (A.C.M.R.1982). On this basis, we will affirm the accused's conviction.[3]

### Passing on Challenges

Recognizing that the immediate issue is resolved by *Harris,*[4] we nonetheless invite particular attention today to the overall difficulties inherent in the subject of challenges for cause.

In *United States v. Barnes,* 12 M.J. 956, 958 (A.F.C.M.R.1982), we set forth four

tion, *see United States v. Findlay,* 7 M.J. 931, 934 (A.C.M.R.1979). In regard to whether a member can sit though opposed to a sentence of "no punishment," *see United States v. Tippit,* 9 M.J. 106, 107 (C.M.A.1980).

**4.** Though *United States v. Harris, supra,* permits us to resolve the matter without reaching the ultimate issue of the challenge itself, we take comfort in the fact that credibility of one witness over another was not a significant factor here. The accused had entered pleas of guilty and the Office of Special Investigations witness in question was to give limited testimony on uncontroverted facts and circumstances surrounding the offenses.

guidelines on the subject of challenges. We believe it worth repeating them here. (1) An accused is entitled to be tried before a panel free from any influence beyond the courtroom. *United States v. Dean,* 5 U.S. C.M.A. 44, 17 C.M.R. 44, 49 (1954); *United States v. Harris, supra; United States v. Burke,* 47 C.M.R. 773 (A.F.C.M.R.1973). (2) The burden of proof is upon the party asserting a challenge for cause; the proponent must raise the contention of bias from the realm of speculation to the realm of fact. *Dennis v. United States,* 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). (3) The military judge should be liberal in passing on challenges; reversal is appropriate only if there is a clear abuse of discretion. *United States v. Boyd,* 7 M.J. 282 (C.M.A.1979); *United States v. Bann,* 50 C.M.R. 384, 387 (A.F.C.M.R.1975). (4) It is important that justice be dispensed in such a manner as to foster the image of fairness and integrity. *United States v. Harris, supra* at 292; *United States v. Cockerell,* 49 C.M.R. 567, 573 (A.C.M.R.1974).

To these four matters, we might add a fifth: Appellate courts will not permit the defense to do legal shadowboxing, creating a "challenge" where one does not exist in reality. As the Court of Military Appeals usefully pointed out in *United States v. Tippit,* 9 M.J. 106, 107–108 (C.M.A.1980):

> ... latitude for counsel in propounding questions to court members about their reactions to hypothetical situations should not become an invitation to reversible error. The military judge has a responsibility to assure that the court members are open-minded and will render findings and, if necessary, impose a sentence based on the evidence before them. However, *he need not engage in minute dissection of responses by members to artful, sometimes ambiguous, inquiries from counsel* .... (emphasis added).

In the overall consideration of these guideposts, it is easy enough to recite the caution, mandated by the Manual for Courts-Martial at paragraph 62*h,* that a military judge should be "liberal" in passing

on such challenges. The crucial question is precisely what is meant by such language.

For our part, appellate review of this area might be characterized as a foil between: "on the one hand" and "yet on the other hand." Thus, for example, *on the one hand:*

—There "must be a clear abuse of discretion in resolving the conflict before an appellate tribunal ... will reverse a decision." *United States v. Dean, supra,* at 49.

—"Unless it is apparent to us from the record of the *voir dire* that a court member has a closed mind about the case he is to try, denial by the military judge of a challenge for cause should not be reserved." *United States v. Tippit,* 9 M.J. 106 (C.M.A. 1980).

—"The trial judge's denial of a challenge for cause must be considered, by persuasive demonstration, to be an abuse of discretion before relief will be granted." *United States v. Stennis,* 12 M.J. 813, 816 (N.M.C. M.R.1981).

*Yet on the other hand:*

—"The military judge ... should be liberal in passing on challenges...." MCM, 1969 (Rev.), para. 62*h. See also United States v. Harris, supra,* at 291.

—"A trial court must excuse a juror if it has any 'lingering doubt' concerning the impact of prior knowledge on a juror's impartiality...." *United States v. Dawkins,* 2 M.J. 898, 902 (A.C.M.R.1976).

—"While the challenging party has the burden of establishing a basis for his challenge, the military judge is, none the less, expected to be liberal in his rulings...." *United States v. Bann, supra,* at 387.

We recognize that during voir dire the trial judge rapidly evaluates and weighs lay responses to sometimes confusing questions on complex topics. Given the precedents cited, we will not, absent a clear and demonstrable abuse of discretion, permit the accused a second throw of the dice here as to those decisions. *United States v. Tippit, supra.* Nonetheless, we remind trial participants that the Court of Military Appeals in *Harris* made two points. First it spoke of

generously construing challenges. Second, it paid deference to the *perception of unfairness* which reasonable men would draw from a given member remaining on the court. *United States v. Harris, supra,* at 291. Thus:

> this Court has also inferred that where circumstances are present which raise 'an appearance of evil' in the eye of disinterested observers, mere declarations of impartiality, no matter how sincere, are not sufficient by themselves to insure legal propriety.

*United States v. Harris, supra* at 292.

 To summarize, the lesson for military judges and trial practitioners should be

obvious: On the close calls, err on the side of being liberal in challenges for cause.[5]

The additional assignment of error is resolved adversely to the accused.

The findings of guilty and sentence are AFFIRMED.

SNYDER, Judge, concurs.

RAICHLE, Judge, absent.

---

5. Someone has suggested that our cautionary exposition parallels that of Sergeant Esterhaus on the popular television series Hill Street Blues. Perhaps he says it better than we: "Let's be careful out there!"