**UNITED STATES, Appellee,**

**v.**

**Staff Sergeant Robert W. MOYAR, 187–32–2463, United States Army, Appellant.**

**ACMR 8601157.**

U.S. Army Court of Military Review.

30 April 1987.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Annamary Sullivan, JAGC, Captain David W. Sorensen, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC, Captain Brendan F. Flanagan, JAGC (on brief).

Before O'ROARK, RABY and CARMICHAEL, Appellate Military Judges.

### OPINION OF THE COURT

O'ROARK, Chief Judge:

Pursuant to his pleas, appellant was convicted of committing an indecent act with his adopted daughter, who then was a female under sixteen years of age, and of committing an indecent act with her after she had attained age sixteen, both offenses in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. sec. 934 (1982). He was sentenced to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

Appellant contends that the military judge abused his discretion by denying appellant's challenge for cause of a court member whose sister had been the victim of indecent acts by his father. We find that the military judge did abuse his discretion in failing to liberally grant this challenge for cause as required by military decisional law.

During pre-sentencing *voir dire* of the court-martial members by defense counsel, Lieutenant Colonel (LTC) B revealed that his sister "was molested by my father" when she was in high school approximately twenty-six years ago and when she was about the same age as the victim in this case. When asked whether he had any doubt he could hear this case fairly and impartially, LTC B answered "No, or I wouldn't have brought it up." Defense counsel subsequently challenged LTC B for cause on the basis that LTC B's answer demonstrated at best evasiveness on his

part. The military judge disagreed with this conclusion, stating, "I took his answer to mean that if he felt that it would impact upon his impartiality in this case, he would not have disclosed that matter to the court...." We find that this statement supports more than detracts from defense counsel's concern with LTC B's candor. Lieutenant Colonel B was recalled to explain his curious answer.

IDC: Colonel B, one of the questions that Captain Hutchins asked you—and forgive me if I don't state it specifically—was that, would the fact that your father molested your sister have anything to do with your judgment or predisposition for sentence or something of this nature, and you stated, 'No, or I would not have brought it up.' What did you mean by, 'I wouldn't have brought it up.'

MEMBER (LTC B): I wasn't sure when you asked the first question about it being an offense whether it was appropriate to bring up something of that nature, but because of the sensitivity of this kind of case and prior knowledge, I felt it was appropriate to bring it up and to surface it at this time.

IDC: Yes, sir, and of course, it was. But I am concerned about your indication to me, and perhaps no other person, that you would not have revealed it at all, if you thought it would tend to sway you one way or another.

MEMBER (LTC B): I have never admitted to this to anyone other than in this courtroom. That's why the sensitivity of it, and that's why I was reluctant to mention it.

DC: That's all we have, Your Honor.

MJ: Colonel B, you indicated this occurred about twenty-six years ago, is that correct?

MEMBER (LTC B): Yes, sir.

MJ: And you indicated that there was no action taken against your father, is that correct?

MEMBER (LTC B): That's correct.

MJ: Is there any reason why no action was taken against your father that you know of?

MEMBER (LTC B): My sister got married and left the family. My parents divorced. I continued to live with my father. My father retired from the Navy. He's deceased now. There was no reason to bring it up.

MJ: Would the fact that your sister was molested by your father about twenty-six years ago affect your judgment in any way in this case?

MEMBER (LTC B): I do not feel it would, sir.

MJ: Do you feel that you can fairly listen to all the instructions in this case, all the evidence in this case, all the extenuation and mitigation, and impose a fair and appropriate sentence in this case based upon what happens in this courtroom?

MEMBER (LTC B): Yes, sir, I do.

MJ: You could put everything else out of your mind and adjudge a sentence based solely upon the evidence, the instructions, the extenuation and mitigation, and the matters brought up in this courtroom today?

MEMBER (LTC B): Yes, sir, I could.

The military judge subsequently denied the defense's challenge of LTC B for cause, declaring that the fact that LTC B's sister was molested twenty-six years ago by his father would not affect LTC B's judgment in this case. This conclusion was reinforced by the trial judge's expressed satisfaction with LTC B's statement that he would adhere to instructions, listen to the evidence and the facts in this case, and based on the instructions, participate on the panel in an impartial manner.

Lieutenant Colonel B was then peremptorily challenged by defense counsel "in light of the military judge's denial of LTC B's challenge for cause." Defense counsel preserved the issue for review by placing on the record that MAJ F would have been peremptorily challenged if it had not become necessary in his judgment to exercise the defense's single peremptory challenge to excuse LTC B. *See* Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 912(f)(4) [hereinafter R.C.M.].

 The issue of denial of challenges for cause remains one of the most sensitive in current military criminal justice practice. At a point in time when our military criminal procedures have never been more comparable to those practiced in civilian criminal courts, the most visible disparity between the two systems is the military trial by superiors as opposed to the civilian trial by peers. The legitimacy of the court-martial jury of superiors is predicated on and justified by the unique requirement for courts-martial to provide both a fair and impartial forum for resolving criminal misconduct and to foster good order and discipline in the armed forces. This inherently more structured approach to criminal justice is made more severe by the military rules which allow a defendant only one peremptory challenge. As an amelioration of this limitation, military law mandates military judges to liberally pass on challenges. *United States v. Smart*, 21 M.J. 15, 21 (C.M.A 1985). Notwithstanding this mandate and the fact that currently military exigency is seldom a factor in management of trials, some trial judges have at best only grudgingly granted challenges for cause and others frustrate the rule with *pro forma* questions to rehabilitate challenged members. The quandary this situation presents on appellate review is the need to consider the policy of judicial restraint which calls for great deference at the appellate level to the discretion of the trial judge's ruling on challenges. Exercise of this restraint, however, does not assuage the lingering dissatisfaction when a denied challenge squarely raises the question whether the court-martial was free from substantial doubt as to legality, fairness, and impartiality. R.C.M. 912(f)(1)(N). For this reason, we fully subscribe to Chief Judge Everett's view that despite respect for the conscientious efforts of trial judges in ruling on challenges, the appellate courts cannot abdicate responsibility to assure that courts-martial are composed of members who are unbiased as to findings and sentence. *Smart*, 21 M.J. at 19.

 Whether a trial judge abused his discretion in denying a challenge for cause has been a frequent issue in reported military case law. Recent cases on point are *United States v. Reynolds*, 23 M.J. 292 (C.M.A.1987); *United States v. Smart*, 21 M.J. 15 (C.M.A.1985); *United States v. Harris*, 13 M.J. 288 (C.M.A.1982); and *United States v. Dawdy*, 17 M.J. 523 (A.F. C.M.R.1983). A synthesis of these decisions establishes the following framework for analysis:

a. Both the Government and an accused are entitled to have a case determined by members with fair and open minds. *Reynolds*, 23 M.J. 292; *Smart*, 21 M.J. 15;

b. The burden of proof is on the party asserting the challenge for cause. *Dawdy*, 17 M.J. 523;

c. A member is not automatically disqualified because of some experience with, exposure to, or an unfavorable inclination toward a particular offense. *Reynolds*, 23 M.J. 292; *Smart*, 21 M.J. 15. The question is whether such personal bias has been shown that it will not yield to the evidence presented and the judge's instructions, *Reynolds*, 23 M.J. 292, or whether the challenge should be granted "in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness and impartiality." *Smart*, 21 M.J. 15;

d. The military judge has reasonable discretion to resolve controversies of fact in reaching a decision to grant or deny a challenge. *Harris*, 13 M.J. 288. Special deference should be given to the discretion of the military judge by appellate authorities because of his superior position to assess bias in terms of the demeanor and ultimately the credibility of the challenged member. *Reynolds*, 23 M.J. 292;

e. Liberal *voir dire* in the form of leading questions may elicit answers from members which indicate bias, but are not truly representative of their frame of mind. The military judge may conduct *voir dire* to accurately determine the presence of bias and to rehabilitate members who have been lured into creating an appearance of bias when none in fact exists. *Reynolds*, 23 M.J. 292; *Smart*, 21 M.J. 15; *Dawdy*, 17 M.J. 523.

In this case, the member revealed an episode in his life for the first time that occurred about twenty-six years ago in which his then sixteen-year old sister had been sexually molested by his father—circumstances quite similar to those which resulted in the charge against the appellant. It appears from the record that this revelation was somewhat of an emotional effort for the member. This may account for his puzzling reply to defense counsel that he would not have disclosed his sister's molestation if he thought this past experience would have caused him to be biased in this trial. Defense counsel interpreted this response to indicate that the member was capable of and may have been withholding relevant information on the issue of his bias. The trial judge apparently took the member's reply to nullify that possibility because the member had, in fact, revealed his past experience with a crime similar to that being tried. Subsequent questioning of the member by defense counsel did nothing to clarify the issue, and the trial judge's somewhat mechanical rehabilitative *voir dire* questioning of the member was equally ineffective (at least on the record). It can only be concluded that the demeanor of the member was sincere and convincing to the trial judge, and for this reason he denied the challenge for cause.

With the case in this posture, it is now incumbent on this court to apply a clear abuse of discretion standard in an area where appellate judges are urged to give great deference to the discretion of trial judges, who are in a superior position to assess member bias. What is being tested is whether the trial judge adhered to the mandate to be liberal in granting challenges for cause—a judicial policy designed to compensate for the fact that a military defendant has only a single peremptory challenge. *See Smart*, 21 M.J. at 19.

In this context it is our view that the threshold for clear abuse of discretion in denying a challenge for cause is lower than has heretofore been articulated. Many prior decisions correctly emphasize the deference due the trial judge's exercise of discretion in ruling on challenges, but the mandate to trial judges to liberally grant challenges carries no such clear imperative. Until it is recognized that this mandate is just that, the likelihood is that some trial judges will continue to consider the rule to liberally grant challenges to be a form of moral suasion to take or leave. If trial judge decisions on challenges are to be given deference at the appellate level, those decisions must more closely adhere to the spirit and intent of the liberal grant mandate than is evident in some such rulings.

Based on the foregoing analysis of the legal structure and judicial policy applicable, we are not satisfied that these proceedings are free from substantial doubt as to legality, fairness, and impartiality. The nature of the crimes with which the appellant is charged is complex, involving not only criminal conduct, but also subtle psychological considerations and changing societal values. We believe the member's public revelation of his prior experience after twenty-six years of suppression to be far more significant in terms of his frame of mind at time of trial than the fact that the events occurred in the distant past. His puzzling response which claimed impartiality of mind, but indicated some potential for duplicity, only clouds the issue further. The trial judge's questioning did not subjectively explore the implications of this statement. Rather they consisted of mechanical rehabilitative questions which led to bare assertions by the member that he could impartially sit as a member. Under these circumstances we are compelled to conclude that the denial of the challenge for cause of LTC B was a clear abuse of discretion by the trial judge.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge RABY and Judge CARMICHAEL concur.