UNITED STATES

v.

**Lieutenant Colonel Earl R. JOBSON,
136–38–5094 FR, United States
Air Force.**

**ACM 27310.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 Aug. 1988.

Decided 16 May 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni; Captain Joseph V. Treanor, III and Captain Rachel V. Lee.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Lieutenant Colonel Jobson, a career officer with almost 19 years of service, was charged with sodomy and indecent acts in a series of unrelated contacts with three teen-aged boys, in violation of Articles 125 and 133, UCMJ, 10 U.S.C. §§ 925, 933. In conformance with his pleas, he was found guilty by a general court-martial consisting of members. He was sentenced to a dismissal, 28 years confinement, and total forfeitures. Honoring a pretrial agreement, the convening authority approved only so much of the sentence as provided for dismissal, confinement for 15 years, and total forfeitures.

Before us, the appellant raises this issue: WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE CHALLENGE, FOR CAUSE, AGAINST A MEMBER WHO HAD KNOWLEDGE ABOUT THE EXISTENCE OF THE PRETRIAL AGREEMENT.

We find error but assess it as harmless. The disposition of this case turns to a significant degree on its particular facts; we must develop them at some length.

*Factual Setting*

On 8 August 1988, during the course of a session under Article 39(a), UCMJ, the appellant pleaded guilty to the offenses charged. On 9 August, the members were called to determine an appropriate sentence. During individual voir dire, it developed that Lieutenant Colonel (LTC) H had become aware of the case through various news reports, including an article appearing in the San Antonio Express–News. LTC H related that he had scanned the entire Express–News article; to his understanding, it reported "simply that the Accused pled guilty and today the sentencing portion of the trial would take place."

After the civilian defense counsel completed his questioning the military judge quizzed LTC H further. The judge specifically inquired if H recalled whether the Express–News article mentioned a pretrial agreement. LTC H answered yes and then gave his understanding of such an agreement; he saw it as "basically, that both prosecution and defense have agreed that, for the entry of a guilty plea, *some stipulation has been arranged prior to trial for whatever specifications*" (emphasis added). The military judge then reminded H that the presence or absence of a pretrial agreement must play "no part in your deliberations whatsoever." LTC H signified that he understood this. The defense was permitted to inquire further, and counsel asked H whether the pretrial agreement might relate to punishment as well as to stipulations of fact or a plea. LTC H responded that he "didn't really give it much thought, one way or the other ... it could relate to anything."

Later, LTC H was recalled for a second individual voir dire. At this juncture, he stated that he had sat on five to ten courts-martial before; he could not recall if any had involved a pretrial agreement. This second, crucial interchange as to the appellant's pretrial agreement was as follows:

CDC: With respect to the newspaper article that you read, I believe you indicated that you read this morning's Express–News coverage?

MEM: Yes, I did.

CDC: And I believe you indicated that, either in depth or cursorily, you read the entire article?

MEM: Yes, I did.

CDC: Do you recall any mention in that article about a pretrial agreement signed by both sides based on Jobson's guilty plea?

MEM: I did not remember it originally until you brought it up.

CDC: Having—you know, sort of like forget what I'm telling you—the more I inquire, perhaps, the more difficult it is not to focus upon that—but there is no other way for us to accomplish this but to ask about it. I believe you indicated, as well, that you understood that such an agreement was called a pretrial agreement?

MEM: Yes, sir.

\*    \*    \*    \*    \*    \*

CDC: In particular, do you recall that the statement regarding the pretrial agreement in context read—although the maximum penalty Jobson could receive for having had sexual relations is 41 years in military prison, loss of rank and pay, and dismissal from the Air Force, a pretrial agreement was signed by both sides based upon Jobson's guilty plea—is that the context in which you recall it being written?

MEM: I just recall the fact that it said there was a pretrial agreement. I read it rather hurriedly before I came to work. I do not recall the specific wording.

CDC: In all honesty and candor, Colonel, did you understand it—at least, thinking about it in context—that, whatever the pretrial agreement was, that it, in some way, limited the matter being discussed —that is, the maximum punishment that could be imposed?

MEM: I never really gave it much thought. I just saw what was before me.

CDC: Having had your recollection refreshed, if it has been, does it now, looking back, seem that this is what you read or what it said to you at the time?

MEM: And, again, I must state that I just recall that there was a pretrial agreement, and, again I read it rather fast and didn't really pay much attention to it.

CDC: Did you recall that the article also specified what the maximum punishment might be?

MEM: No, I do not.

CDC: Did you take the statement—a pretrial agreement was signed by both sides based upon Jobson's guilty plea—in essence, to mean a plea bargain? Is that what you understood it to mean?

MEM: No, sir, I do not remember thinking that.

\* \* \* \* \* \*

MJ: With respect to the questions the Defense asked, would you state again what your impression was when you read the article of what was, at least, the report in that article's version of what was happening?

MEM: Just that a trial was being conducted at Randolph [Air Force Base, Texas] involving a Lt Colonel, based at Randolph. The individual had, as I recall, pled guilty. I vaguely recall something about a pretrial agreement. Again, I read it rather hurriedly. That's basically, about what I recall.

MJ: And you indicated earlier what your assessment was of what a pretrial agreement consisted of. Could you tell us again what that was?

MEM: An agreement between the prosecution and the defense as to some form of—well, they are in agreement to decide to do something other than to carry out a full trial.

MJ: And did you, at that point, relate that to the length of the sentence in the case?

MEM: No, I did not.

MJ: All right. And, based upon what you heard from Counsel and the questions that have been asked to you by myself and Trial Counsel, as well as the Defense Counsel, do you feel that you could still look at this case with an open mind and assess a punishment in the case

that is based solely upon the evidence that is presented in Court?

MEM: I believe I can.

The defense challenged LTC H for cause, based on his knowledge of the pretrial agreement. Denying the challenge, the military judge stated that: (a) LTC H could be open-minded; and (b) while LTC H knew of the possible existence of a pretrial agreement, he was ignorant of its terms. The defense then requested an additional peremptory challenge. When that was denied, the defense indicated an intent to use its allotted challenge against Colonel T; this was now impossible, claimed the defense, because the challenge for cause against LTC H had been improperly denied. The defense subsequently used its sole peremptory challenge against LTC H.

Upon these facts, the appellant argues that the military judge erred since decisional law "has long held that it is error for court members to know that a pretrial agreement exists."

### Pretrial Agreements

We begin our analysis with a brief historical survey. Prior to 1984, neither the UCMJ nor the Manual for Courts–Martial mentioned pretrial agreements. The Army began to employ the device to encourage speedier disposition of cases in 1953. *See* Army Pamphlet 27–173, *Trial Procedure*, para. 11–1 (15 February 1987). Pretrial arrangements were sanctioned by the Court of Military Appeals in 1957 in *United States v. Allen*, 8 U.S.C.M.A. 504, 25 C.M.R. 8 (1957). In the Air Force, acceptance of such bargaining has been more grudging. *See* Moyer, *Justice and the Military* 445–446 (1972). Even today, caution is advised whenever considering Air Force pretrial offers. Routinely, for example, only officers exercising general court-martial authority are authorized to accept such defense proposals. *See* Air Force Regulation 111–1, *Military Justice Guide*, paras. 7–1 and 7–2 (30 September 1988).

Decisions have addressed the consequences of pretrial agreements over the years. In *United States v. Withey*, 25 C.M.R. 593 (A.B.R.1958), the law officer

responded to court member questions and advised them that the accused had pleaded guilty as the result of a "deal" with the convening authority as to the maximum sentence. Terms of that agreement were not disclosed to the members. They were told not to speculate as to its terms. The court president commented that he saw "absolutely no purpose in having a court-martial if you have predetermined a sentence for the accused." *Id.* at 595. A rehearing on sentence was deemed appropriate.

In *United States v. Montes,* 44 C.M.R. 784 (N.C.M.R.1971), trial counsel referred to the convening authority's obligation to credit the accused with confinement already served; the Navy court reached the same conclusion as *Withey,* commenting that court members who became aware of a pretrial agreement might conclude that the process of sentencing an accused was a useless and mechanical formality; sentence reassessment was necessary.

In *United States v. Massie,* 45 C.M.R. 717 (A.C.M.R.1972), *pet. denied* 45 C.M.R. 928, trial counsel informed the court members that a pretrial agreement existed; he did not relate its terms. Noting that there were strong limiting instructions from the military judge, the Army Court was of the opinion that—unlike *Withey*—any possible prejudice could be cured by reassessment rather than a rehearing. The Army Court also noted that in prior cases the Government had apparently concurred in the defense request for a rehearing. *Id.* at 718.

In 1974, the Court of Military Appeals commented in passing on the topic in *United States v. Wood,* 23 U.S.C.M.A. 57, 48 C.M.R. 528 (1974). The case centered on whether the defense was free to try and "beat the cap" by arguing that the accused was worthy of greater leniency than that contained in the pretrial agreement. Nonetheless, the Court expressed concern that knowledge of the sentence provisions might incline the members to vote sternly lest they come in under the existing agreement with the convening authority. *Id.* at 532. *But see United States v. Murphy,* 26

M.J. 454, 456 n. 3 (C.M.A.1988) (high integrity of officer-members).

Finally in *United States v. Custer,* 7 M.J. 919 (N.C.M.R.1979), the Navy Court held it was error for the military judge to instruct the members concerning the possible existence of a pre-trial pact. The opinion is badly fractured, with a concurrence and dissent. The majority held that a rehearing on sentence was unnecessary since the court members had imposed a fair sentence much below the maximum.

Given this background, we are called upon to assess whether the challenge for cause against LTC H was improperly denied. As we see it, LTC H held some vague knowledge that a "pretrial agreement" might exist; yet his definition of it equated to what lawyers would call a stipulation. We thus face an unusual fact situation—semantic confusion as to what the term "pretrial agreement" meant *to LTC H.* The precedents involve three matters not present in the instant case: (1) in each of the decided cases, *all* the voting court members knew something they shouldn't; (2) in each, what the members knew was that there has been some sort of "deal," presumably about the sentence, between the accused and the convening authority; and (3) in each case, knowledge of the pre-trial arrangement was generated by a uniformed source, whereas in the present case the local media created that information.

■ On balance, we believe the reasoning of those cases requires us to resolve this matter in favor of the appellant. Concededly, the taint in those precedents extended to all the veniremen, and it involved clear-cut member knowledge that there was some sort of agreement or "deal" between the contestants in the court-martial. However, we believe it incongruous to say that even one tainted member is acceptable when a band of tainted members, such as those involved in *Withey, Massie,* and *Custer,* is not. Moreover, we find it impossible to speculate upon what LTC H might have revealed to the other members in closed session (had he sat) about whether he now

suspected an "arrangement" between the convening authority and LTC Jobson.

We appreciate the dilemma of the litigants at trial. During earlier questioning, H had defined "pretrial agreement" to equate to some sort of stipulation. The military judge and defense cannot be blamed for wishing to guarantee themselves that H did not believe it also dealt with a limitation on sentence. Yet how might one lead LTC H to reveal precisely what he meant except by specifically inviting him to address the meaning of the term "pretrial agreement" and broaching the possibility that it included a sentence limitation? Following such questioning, we believe the member—even with the best of intentions—would have guessed that something was afoot between the parties concerning sentence terms.

We therefore agree with appellate defense counsel, who insisted during oral argument that LTC H may have been ignorant at the outset of voir dire of the true meaning of the term "pretrial agreement;" yet surely he must have suspected a sentence cap by the time voir dire was completed. We believe the risk is too great that H became sufficiently tainted by this point. Accordingly, we find that the military judge erred in failing to grant the defense challenge for cause against LTC H.

In carefully reading the record on this point, we find not the slightest suggestion that the defense resorted to trickery or gamesmanship in questioning LTC H. *See generally United States v. Newson*, 26 M.J. 719, 722 (A.C.M.R.1988). To the contrary, the record reflects a search on the part of both the military judge and the defense as to precisely what H knew. Indeed, during LTC H's first voir dire, civilian defense counsel had completed his questioning; it was the military judge who took the matter into deeper waters and posed the topic of a pretrial agreement. As we have already indicated, the problem facing the trial participants was unusual since LTC H was ostensibly ignorant of the accepted meaning of the term "pretrial agreement." This being the case, it was

necessary to ferret out what was in H's mind. We reject any contention that this was a mischievous defense trick to create error; some might even say a solid defense attorney has an obligation to get to the bottom of the matter.

We accord considerable deference to a military judge's decision as to challenges for cause. *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A.1987) and *United States v. Smart*, 21 M.J. 15, 19–20 (C.M.A. 1985). Nevertheless, a military judge cannot rely solely on a member's declarations of impartiality to deny a challenge if the facts establish the existence of implied or of actual bias. *United States v. Harris*, 13 M.J. 288 (C.M.A.1982). The military judge's ruling is tested on appeal by a "clear abuse of discretion" standard. *See United States v. Travers*, 25 M.J. 61, 62 (C.M.A.1987). However, the threshold for clear abuse of discretion in denying a challenge for cause may be "lower than has heretofore been articulated." *United States v. Moyar*, 24 M.J. 635, 639 (A.C.M.R. 1987). *See generally* Ingold, *Discovering and Removing the Biased Court Member*, Army Lawyer 32, 37–38 (January 1986). After considering the governing authorities, we find that the military judge indeed erred.

### "Forced Use" of Peremptory Challenges

This finding of error does not complete our task. As noted above, the defense challenge for cause against LTC H was denied. A defense request for an additional peremptory challenge was also denied. As mentioned earlier, defense counsel stated that he intended to use his one allotted peremptory challenge against Colonel T but now could not because the challenge for cause against LTC H had been improperly denied. He then used his sole peremptory challenge against H. Clearly, the issue is preserved for appeal under R.C.M. 912(f)(4).

█ We hold that there was no substantial harm to the rights of the appellant since the challenged member, removed by means of the peremptory challenge, did not sit for sentencing. The court-martial as

ultimately constituted was composed of qualified, competent members who appear to have impartially adjudged a sentence.

■ The "forced use of the peremptory challenge"—with the defense cleansing the panel of someone by its sole peremptory strike when a challenge should have been sustained—is an ancient dilemma in military law. As the appellate defense counsel tellingly notes, peremptory challenges are limited in courts-martial and our responsibility to provide oversight may be greater than in civilian practice. *See United States v. Smart*, 21 M.J. 15, 19 (C.M.A. 1985). Nevertheless, as we noted in *United States v. Harris*, 11 M.J. 589, 592 (A.F. C.M.R.1981), *aff'd* 13 M.J. 288 (C.M.A. 1982), the use of the peremptory challenge, forced or otherwise, purges any resulting error. *United States v. Swanson*, 25 C.M. R. 832, 837 (A.F.B.R.1958), *rev'd on other grounds*, 9 U.S.C.M.A. 711, 26 C.M.R. 491 (1958). *See also United States v. Michaud*, 48 C.M.R. 379 (N.C.M.R.1973), *pet. denied*, 23 U.S.C.M.A. 602 (1974) (numerous cases cited from military and Federal systems); and *United States v. Brakefield*, 43 C.M.R. 828 A.C.M.R.1971), *pet. denied* 21 U.S.C.M.A. 604, 43 C.M.R. 413 (1971). Federal cases are gathered in Annot., 95 A.L.R.2d 957, 982 (1964). As one authority states it, exercise of the peremptory challenge is generally deemed to waive an error by the trial court in ruling on a challenge to such a juror for cause; there is some authority contra. *See* 47 Am.Jur. *Jury* Section 218 (1969).

In addition, the Supreme Court recently decided *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), which suggests that so long as no objectionable party actually sits in judgment of an accused, a wrongly denied challenge for cause is harmless error. In addition, the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 84 n. 4, 106 S.Ct. 1712, 1716 n. 4, 90 L.Ed.2d 69, 74 n. 4 (1986), appears to reject the concept of an inherent Sixth Amendment right to a peremptory challenge. *See United States v. Carter*, 25 M.J. 471, 478 (C.M.A.1988) (Cox, J., concurring) and *United States v. Capua*, 656 F.2d 1033, 1038 (5th Cir.1981).

We note that the numerous military cases cited above all involve prior editions of the Manual for Courts–Martial. Has the rule been changed in the 1984 Manual for Courts–Martial? Several recent Army decisions take the position that peremptorily excusing the challenged member does not finesse the problem. *See United States v. Moyar*, 24 M.J. at 635 and *United States v. Anderson*, 23 M.J. 894, 896 (A.C.M.R.1987). We decline to follow this analysis by a well-respected fellow court. Such a per se approach concedes that the suspect juror was absent from the ultimate panel; yet it grapples with the excused member *as if he had sat.* This approach, we believe, fails to concentrate on the real issue: Whether there was prejudice to the appellant from the members who did sit. We do not view R.C.M. 912(f)(4) as changing earlier precedents. To our minds, the new Rule made clear the procedural requirement for preserving an issue; it did not overturn a clear-cut line of cases that use of the peremptory challenge purges the matter. *See generally* Analysis, R.C.M. 912(f)(4), page A21–55.

Accordingly, we have carefully reviewed the record of trial. The appellant peremptorily removed the very member he wanted challenged for cause and thus he had a fair trial before openminded members. We find no harm to the appellant's substantial rights.[1]

---

1. We urge all trial judges and prosecutors to read and reread the guidance as to liberally granting challenges provided by *United States v. Moyar*, 24 M.J. 635 (A.C.M.R.1987) and *United States v. Dawdy*, 17 M.J. 523 (A.F.C.M.R.1983). We cannot overemphasize the time wasted untangling these matters on appeal. We thus press home to military judges, in the strongest possible terms, what was said by the Commander-in-Chief in another context: "Read my lips." We also solicit military trial judges to utilize their good offices to minimize the risk to potential jurors from pretrial publicity in newsworthy cases. *See United States v. Garwood*, 16 M.J. 863, 868 (N.M.C.M.R.1983) *aff'd.* 20 M.J. 148 (C.M.A.), *cert. den.* 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 456 (1985) and Annot., 5 A.L.R.Fed. 948 (1970). Finally, we remind practitioners of the possibility of awarding additional peremptory challenges as elaborated upon in *United States v. Carter*, 25 M.J. 471 (C.M.A.1988).

### Claim of Excessive Sentence

■ In another assignment of error, the appellant argues that the sentence is excessive. Following sentencing by the members, the appellant received the benefit of a generous sentence cap which maximized his confinement at 15 years. We have carefully analyzed the offenses charged and the extremely aggravating circumstances of the appellant's sexual crimes involving young boys. We find the sentence fitting.[2] *See United States v. Bramel*, 28 M.J. 505, 511 (A.C.M.R.1989).

We note, finally, the possibility that LTC Jobson was the subject of an impermissible search and seizure. We suggest that the matter raises a serious concern as to Government overreaching; it may very well bear looking into by appropriate authorities. We are positive that that no nexus whatsoever appears to exist between a possible violation of the appellant's rights and anything remotely touching upon his trial; nor has appellate defense counsel so asserted.

The findings of guilty and the sentence are correct in fact and law and, upon the basis of the entire record, are

AFFIRMED.

Judge BLOMMERS concurs.

Senior Judge LEWIS (concurring):

Senior Judge Kastl's analysis of the challenge issue is well reasoned and persuasive. However, while reaching the same result as the majority, I do so for another reason.

As the majority recognizes, appellate military courts customarily accord the trial judge great deference in the exercise of discretion on challenge issues. The military judge has the opportunity to observe the demeanor of the challenged member and, thereby, to make an informed judgment concerning his ability to perform judicial responsibilities in a fair and impartial manner. *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A.1987); *United States v. Mayes*, 28 M.J. 748 (A.F.C.M.R.1989). LTC H's responses, as set forth in the main opinion, do not appear to betray an insight or bias which would have been harmful to the appellant's interests. I would assume that his demeanor, as displayed to the military judge during the course of individual *voir dire*, was consistent with the nature of his responses on the record before us. In short, LTC H's knowledge of a pretrial agreement made no harmful impression on him, nor would it affect his ability to determine a sentence based solely on evidence presented in court. The military judge saw fit to take LTC H at his word. I have no basis for saying that he was wrong in doing so. *See generally, United States v. Murphy*, 26 M.J. 454, 456 n. 3 (C.M.A. 1988), cited by the majority in the same context.

In evaluating the military judge's exercise of discretion it should be noted that he sustained a similar challenge for cause against another member who had also been exposed to pretrial media coverage and who clearly acknowledged his understanding that a limitation on punishment had been agreed to. Thus, the military judge demonstrated that he was well aware of the material implications of a member's inadvertent exposure to pretrial publicity.

The suggestion that the pretrial agreement possibly, or even probably, included a limitation on punishment was injected into the *voir dire* of LTC H through a defense question. On oral argument, appellate defense counsel urged that LTC H's knowledge of the pretrial agreement at the completion of *voir dire* was equivalent to that of the successfully challenged member. If one were to concede that this were so (which I do not on the record before us), such equivalence was the product of a de-

---

2. The author judge would reassess the sentence at fourteen years because of overzealousness by the prosecution, to include misstating to the voting members that the appellant had "raped" his victims when this was not so; calling civilian defense counsel "dangerous;" and generally engaging in overreaching tactics, including com-

bativeness towards the military judge while members were present. The author judge opines that the tactics of the trial counsel were accurately represented by appellate defense counsel, in a telling simile, as those of a street fighter and not a professional boxing champion.

fense query. I agree entirely with the majority that we have no basis for concluding thereby that the defense engaged in a mischievous trick to create error. On the other hand, I do have difficulty in accepting the view that the defense counsel had an obligation, in getting to the bottom of the matter, to pose this particular question and run the risk of unnecessarily creating the impression of information that the member should not have known. The point is that it was the appellant's counsel who assumed this risk, notwithstanding the fact that he was acting in good faith when he did so.

For the reasons stated I would accord the military judge the customary appellate deference on this issue. I conclude that he did not abuse his discretion in denying the challenge for cause against LTC H.