UNITED STATES

v.

Airman Donald I. ABDELKADER,
FR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, United States
Air Force.

ACM 28701.

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 March 1990.

Decided 23 Jan. 1992.

Appellate Counsel for the Appellant: Captain David D. Jividen (argued), Colonel Jeffrey R. Owens, and Major Ronald G. Morgan.

Appellate Counsel for the United States: Major Ann M. Mittermeyer (argued), Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, and Major Paul H. Blackwell, Jr.

Before O'BRIEN, PRATT and McLAUTHLIN, Appellate Military Judges.

OPINION OF THE COURT

McLAUTHLIN, Judge:

We conclude that the military judge in this case abused his broad discretion denying a defense challenge for cause. Our disposition of this issue makes comment upon appellant's six other issues unnecessary.

Contrary to his pleas, Airman Donald Abdelkader was found guilty of uttering four bad checks with the intent to defraud in violation of Article 123a, UCMJ, 10 U.S.C. § 923a, and of dishonorably failing to maintain sufficient funds to cover seven other checks in violation of Article 134, UCMJ, 10 U.S.C. § 934. The officer and enlisted members of his general court-martial sentenced him to a bad-conduct discharge, 6 months confinement, forfeiture of $200 pay per month for 6 months, and reduction to E-1. The convening authority approved the sentence on 20 June 1990, but suspended execution of the bad conduct discharge until 15 June 1991, at which time it was remitted.

During general voir dire of the 14 original panel members, Colonel H disclosed that he was the installation's vice wing commander. As such, he said he reviewed all performance reports forwarded for the wing commander's indorsement. Seven members of the panel believed their evaluations fell into this category. Colonel H also revealed that he was aware of the facts and circumstances giving rise to the appellant's court-martial. In individual voir dire, Colonel H said he and the wing commander received a weekly "crime update" from "... the OSI [Office of Special

Investigations], the judge advocate's office, and the security police on any issues that those individuals are working that might have an impact on the wing." Colonel H said he had been briefed on the appellant's case and that he recalled from those briefings "... pretty much what's written here as charges, that the accused was passing bad checks and had not made restitution. And on several occasions, he had the opportunity but hadn't done that."

In response to questions from the military judge, Colonel H said he thought he could put those earlier briefings aside and not consider them during the proceedings. He expressed his belief that he could determine the appellant's guilt or innocence and any sentence based solely on the evidence presented. He also agreed not to relay any of his prior knowledge of the case to the other members. He told the trial counsel that he considered the appellant innocent, and that he would place the burden on the government to prove the appellant guilty. Then, defense counsel asked Colonel H, "Would you want someone to sit on the case and judge you that had been briefed on what you might have done in the past in passing—I think you referred to bad—bad paper or bad checks?" Colonel H replied, "I don't believe I would want that, no."

At the appropriate time in the proceedings, appellant's defense counsel challenged Colonel H for cause. The defense counsel expressed surprise that the vice commander for the special court-martial convening authority had even been named to the panel, especially after having discussed the appellant's case in what was informally referred to as the "Drugs and Thugs" meeting. Government counsel contended that Colonel H knew "little more" about the case than the other members. Colonel H's knowledge that the appellant had not made restitution was unimportant, the prosecutor argued, since "anyone is going to assume that and the court members are going to find that out later." When the trial counsel finished his argu-

ment, the military judge denied the challenge.

The trial defense counsel requested reconsideration of this ruling, highlighting the difference between Colonel H's ongoing familiarity with the case and the other members' momentary exposure to the flimsies.[1] The defense counsel also expressed concern about an impaired appearance of fairness caused by leaving the wing's vice commander on the panel. When the defense counsel concluded his argument, the military judge announced that he would "still deny the challenge for cause ... based on [Colonel H's] comments [that] he can sit in this proceeding and be fair and impartial."

■ Defense counsel next requested an extra peremptory challenge based on the "nature and size of the jury." After the military judge denied this request, the defense counsel peremptorily challenged Colonel H, noting that the peremptory challenge would have been used against another member if the challenge for cause against Colonel H had been granted. Therefore, the issue was properly preserved for appeal. R.C.M. 912(f)(4); *United States v. Jobson*, 31 M.J. 117 (C.M.A. 1990).

In *United States v. Hawks*, 19 M.J. 736 (A.F.C.M.R.1984), our former Chief Judge Hodgson observed:

> [C]hallenges for cause can test the mettle of the most experienced and conscientious judge, as he must weigh competing principles and make a ruling quickly and without the time for reflection that appellate courts are given—the task is not easy. On one hand he is admonished to be liberal in passing on challenges, *United States v. Mason*, 16 M.J. 455, 457 (C.M.A.1983) (Everett, C.J., dissenting), and on the other hand reminded that the moving party has the burden of proof to establish the contention of bias as fact, not speculation. *United States v. Dawdy*, 17 M.J. 523 (A.F.C.M.R.1983). He is also urged to insure that his ruling on

1. The "flimsy" is a separate copy of the court-martial's charges and specifications given to the panel members.

the challenge does not give rise to a "perception of unfairness which reasonable men would draw from a given member remaining on the court." *United States v. Harris*, 13 M.J. 288 (C.M.A. 1982); *United States v. Dawdy, supra.* It is because of the many factors he must consider, that his ruling denying a challenge for cause will be reversed on appeal only if there is a clear abuse of discretion. *United States v. Mason, supra; United States v. Boyd*, 7 M.J. 282 (C.M.A.1979); *United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954). (footnote omitted) 19 M.J. at 738.

■ Colonel H disclaimed any bias, and we are satisfied that he appeared sincere to the military judge. Moreover, we recognize that Colonel H's position alone was not grounds for his automatic exclusion from appellant's panel. *See United States v. Blocker*, 32 M.J. 281, 287 (C.M.A.1991). Nonetheless, we conclude that the defense challenge for cause against Colonel H should have been sustained and that the military judge's denial of that challenge amounted to a clear abuse of discretion.

■ The military judge said he based his decision solely on Colonel H's expressed belief that he could be impartial. We find this rationale inadequate. A perfunctory declaration of impartiality, no matter how sincere, is not enough to remedy a disqualification. *United States v. Miller*, 19 M.J. 159, 164 (C.M.A.1985). Disclaimers of this type are not unusual in military practice, and they are insufficient to remedy a question of implied bias. *See United States v. Harris, supra* at 291, 292. The appearance of keeping Colonel H on the panel remained a concern because the judge never unearthed the precise nature of the base's "Drugs and Thugs" meeting. Was it simply a weekly briefing of pending cases or, as is common at many Air Force installations, did it delve into the details of each case's strengths and weaknesses with a view toward perfecting cases for prosecution? Could inadmissible evidence about appellant's case have been discussed in these meetings that Colonel H, even with the best intentions, would have been unable to separate from the evidence presented to him in appellant's trial?

Colonel H's position in the wing, coupled with his attendance at weekly meetings in which the appellant's charges were discussed, created an image of impropriety which the voir dire did not dispel. In fact, the perception worsened in individual voir dire when Colonel H revealed what it was he had learned about the case before trial—that this accused, who had pleaded not guilty, was "passing bad checks and had not made restitution." Colonel H's observation that he would not want someone with his knowledge of this case to judge *him* as the accused should have been heeded when the defense challenged him for cause. The appearance of evil must be avoided as much as the evil itself. *United States v. Barnes*, 12 M.J. 956, 958 (A.F.C.M.R.1982); *United States v. Baum*, 30 M.J. 626 (N.M.C.M.R.1990).

The defense challenge of Colonel H for cause should have been granted in the "interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N); *United States v. Smart*, 21 M.J. 15, 20 (C.M.A.1985); *United States v. Barnes, supra.* Accordingly, the findings and sentence are set aside. A rehearing is authorized.

Chief Judge O'BRIEN and Senior Judge PRATT concur.