## UNITED STATES

### v.

### Joseph J. NELSON, Jr., 433 29 1902, Private First Class (E–2), U.S. Marine Corps.

### NMCM 91 1673.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 24 Oct. 1990.

Decided 31 July 1992.

LT Nanette M. Derenzi, JAGC, USN, Appellate Defense Counsel.

CAPT G.R. Abbate, Jr., JAGC, USN, Appellate Defense Counsel.

Col T.G. Hess, USMC, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

REED, Judge:

Appellant was tried by general court-martial before officer and enlisted members. Pursuant to his pleas he was found guilty of the rape of a petty officer in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. He was sentenced to confinement for four years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.[1]

■ The appellant's first assignment of error[2] deals with the military judge's failure to sustain a challenge for cause of Lieutenant Colonel (LtCol) A, a court-martial member. On his member's questionnaire, LtCol A indicated that his daughter had been raped when she was thirteen years old. During *voir dire* by trial defense counsel, LtCol A revealed that the perpetrator had been a customer on his daughter's paper route. He further indicated that no weapon had been used, and that the perpetrator had been caught and incarcerated for 5 years. LtCol A had not attended the trial. When asked if a Marine had been the perpetrator, LtCol A stated that the incident had occurred off base, and the perpetrator was not a Marine. He continued, "In fact, my daughter lives with my first wife and it [the rape] was not involved with the military." When asked if his daughter's rape would affect his determination of an appropriate sentence, he replied, "I don't believe it will have any effect. I think each case has to stand on its own merits, and I really believe it won't have any effect whatsoever. In my daughter's case, a year had transpired from the incident before it even surfaced what had taken place." The military judge denied the challenge after observing: "I'm not persuaded that Lieutenant Colonel [A's] involvement with the crime against his daughter was such as to render him partial to this case. Because he indicated that his daughter was living with his ex-wife and he

---

1. The pretrial agreement had no effect on the sentence adjudged. It provided only a limitation on the confinement that would be approved—five years.

2. I. THE MILITARY JUDGE ERRONEOUSLY DENIED APPELLANT'S CHALLENGE FOR CAUSE AGAINST LIEUTENANT COLONEL [A].

does not seem to be very emotionally involved with it."

■■■ A member is not automatically disqualified because of some exposure to a particular offense. *United States v. Smart*, 21 M.J. 15, 19 (C.M.A.1985); *United States v. Moyar*, 24 M.J. 635, 639 (A.C.M.R.1987). The members that sentence an accused must be composed of individuals with fair and open minds. However, the burden of proof is on the party asserting the challenge for cause. *Moyar* at 638. "The test is whether the member's personal bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A.1987). In the case before us we are convinced that LtCol A had such a fair and open mind. He answered forthrightly and with no ambiguity all *voir dire* questions put to him. The military judge stated on the record that LtCol A appeared free from emotional involvement in the offense. We note that the Court of Military Appeals has held that "[d]ue to his superior position, the military judge's determination of bias is entitled to great deference on appeal and will not be reversed absent a clear abuse of discretion." *Reynolds* at 294. We are satisfied that these proceedings are "free from substantial doubt as to legality, fairness, and impartiality." *Moyar* at 639. The first assignment of error is without merit.

■■■ The appellant's second assignment of error[3] deals with the convening authority's actions. A chronology of events helps explain the situation. On 4 January 1991, the staff judge advocate (SJA) completed his recommendation for the Commanding General. The recommendation was then mistakenly passed to the Commanding General rather than being served on the trial defense counsel as required by Rule for Courts–Martial (R.C.M.) 1106, Manual for Courts–Martial (MCM), United States, 1984. On 9 January 1991, after reading his SJA's recommendation, the Commanding General penned the following to the bottom of the SJA recommendation:

> 910109
>
> After a thorough review of the record of trial in the case of PFC J.J. Nelson, I approve the sentence as adjudged.
>
> G.R. Christmas, BGen, USMC, CG, 3d FSSG

On 15 January 1991 a copy of the SJA's recommendation was served on trial defense counsel who noted in his response of 24 January 1991 that the recommendation should have been served on him prior to its being sent to the Commanding General. In accordance with the principles set forth in *United States v. DeGrocco*, 23 M.J. 146 (C.M.A.1987), trial defense counsel offered that the following materials would have been submitted had he had the opportunity to present such matters: letters from friends and family regarding the appellant's good character, appellant's progress reports from the brig, and the fact that one of the court members who sentenced appellant would have supported some form of clemency.

On 9 May 1991, the SJA prepared a supplemental recommendation in reply to trial defense counsel's 24 January response, indicating that no corrective action on the findings or sentence was necessary but recommending to the convening authority that the trial defense counsel be allowed to present any clemency matters he desired "to eliminate unnecessary delay and perhaps unnecessary confinement should you decide at this point to grant clemency." On 21 May 1991, trial defense counsel responded to this SJA recommendation, deeming it to be without "legal effect" since it was not in compliance with R.C.M. 1106(f)(2). On 14 June 1991, the Commanding General withdrew his 9 January 1991 convening authority's action as erroneous and issued a new action which approved the sentence and, except for the dishonorable discharge, ordered it executed. The Commanding General noted that "[i]n taking this action, I have seriously considered,

---

**3.** II. THE CONVENING AUTHORITY'S ACTION DATED 14 JUNE 1991 IS A NULLITY BECAUSE THE CONVENING AUTHORITY ERRONEOUSLY WITHDREW HIS INITIAL ACTION, SUBSEQUENT TO ITS PUBLICATION.

in a light most favorable to the accused, the post trial matters submitted by the detailed defense counsel dated 24 January 1991 and 21 May 1991."

The Government argues that the convening authority's note on the SJA recommendation of 9 May did not constitute an action pursuant to R.C.M. 1107. We disagree. From the language used it is clear that the Commanding General was taking action on the court-martial proceedings.[4]

Next we consider whether the convening authority's action was illegal since taken prior to service of the SJA recommendation on the accused and counsel pursuant to R.C.M. 1106. We hold that although the convening authority was incorrect to act prior to the forwarding of the SJA recommendation to the trial defense counsel for comment, such action is not a nullity. However, if prejudice is shown, the record will be returned for a new convening authority's action. *See United States v. Skaar*, 20 M.J. 836 (N.M.C.M.R.1985) (en banc). There this Court said:

> We hold that, in cases where the convening authority prematurely takes initial action under R.C.M. 1107(b)(2), the appellant, seeking relief therefrom, bears the burden of at least asserting a colorable claim that he intended to timely submit R.C.M. 1105 material to the convening authority and that he was deterred from so doing by the fact of the convening authority's premature action.... By colorable claim we envision, as a minimum, an offer of proof which suggests the character of the matters which the appellant intended to submit.

*Skaar* at 840.

In the case before us, trial defense counsel has preserved the issue by noting the premature action and making an offer of proof of those matters he would have submitted had he been given the opportunity to respond to the SJA's recommendation prior to the convening authority approving the findings and sentence of the court-martial.

However, this does not end our inquiry—the question remains, could the convening authority withdraw his original action and substitute a new one, prior to forwarding the record of trial for further review, or was such a withdrawal and the issuance of a new action a nullity? R.C.M. 1107(f)(2) provides that "[t]he convening authority may recall and modify any action taken by that convening authority at any time before it has been published or before the accused has been officially notified." We assume that appellant was formally notified of the convening authority's action by service of that action on his trial defense counsel. If the formal notification to appellant was a bar to the subsequent modification, absent direction from higher review authority, *see* R.C.M. 1107(f)(2), then the subsequent modification was a nullity and this Court would have to require the convening authority to repeat his corrective action.

The Army Court of Military Review has had occasion to speak to this issue and has noted that

> [t]he Courts of Military Review have held the subsequent, modifying actions of a convening authority to be a nullity when those actions came after the case had been forwarded for further appellant review; but when the modifying actions came prior to forwarding, while the case was still under the convening authority's control, the Courts have declined to hold such actions a nullity. Significantly, in none of the latter cases were the subsequent actions to the prejudice of the accused.

*United States v. Hicklin*, 8 M.J. 568, 571 (A.C.M.R.1979) (citations omitted), *aff'd*, 10 M.J. 25 (C.M.A.1980). "It does not detract from the stability of a convening authority's action to permit him to correct an error for the benefit of an accused while a case remains within his control," *i.e.*, it has not been *forwarded* for further review. *Id.* Such an act permits the correction of an

---

**4.** We note that there is no requirement that a particular format or words be used as long as the convening authority has made his intent clear in his specific action. *See generally* R.C.M. 1107 and Appendix 16, MCM.

action at the earliest possible time.[5] We find this logic persuasive and adopt the Army Court's rationale as our own.[6] In light of the convening authority's subsequent withdrawal and the issuance of a new action according appellant full consideration, we find no prejudice to appellant.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Judge LAWRENCE CONCURS.

JONES, Senior Judge (concurring):

I agree with Judge Reed's opinion except as it finds that trial defense counsel "preserved the issue" for *our* review as it relates to the defense's opportunity to submit matters pursuant to Rules for Court–Martial 1105 and 1106(f)(4).[1] In fact, the staff judge advocate recognized that the convening authority's action was premature and provided defense counsel the opportunity to submit any matters that he wished. Counsel's choice to withhold those matters from the convening authority waived the error.

I recognize that defense counsel was faced with a tactical decision to make. Had he submitted the material at the time, we would have concluded that the defense had gotten all that they were entitled to and that any error was waived. Defense counsel instead took the position that even though he had material to submit, he would

not because the accused had been put "in the position of changing [the convening authority's mind] rather than simply persuading [him] to show leniency." This, according to counsel, was more than the Rules for Courts–Martial require. I disagree. There is no indication that this convening authority was wedded to his earlier action and that matter submitted to him would have fallen on deaf ears. Convening authorities are daily asked by counsel and accused to reconsider their positions based upon new matter presented as part of pretrial negotiation involving forum, the referral of specific charges, and limitations on sentence. I see no difference in this context, especially where as here the convening authority has been told that his earlier action was in error. In fact, if throughout the appeal process the same individual remained the convening authority, I would have no hesitation in returning the record to him had we not adopted the reasoning of *Hicklin.* The upshot then would have been to delay the submission of the defense material held in hand by counsel for well over a year with no different outcome.

---

5. The benefit to the accused is obvious—he is afforded the right he should have had to submit matters under R.C.M. 1106 in response to the SJA's recommendation.

6. This seems to comport with the spirit of R.C.M. 1107(f)(2) as embodied in the analysis thereto. The analysis to R.C.M. 1107(f)(2) indicates:

   Subsection (2) is based on paragraph 89b of MCM, 1969 (rev.). The second sentence is new. It is intended to simplify the procedure when a defect in the action is discovered in Article 65(c) (sic) review. There is no need

for another authority to formally act in such cases if the convening authority can take corrective action. The accused cannot be harmed by such action. A convening authority may still be directed to take corrective action when necessary, under the third sentence.
Analysis, Appendix 21, R.C.M. 1107, A21–75, MCM, United States, 1984.

1. Trial defense counsel certainly preserved the defense right to submit such matters to the convening authority *at that time.*