**UNITED STATES, Appellee,**

v.

**Private E–1 William S. CARNS, 591–20–5482, United States Army, Appellant.**

**ACMR 8702314.**

U.S. Army Court of Military Review.

27 Dec. 1988.

---

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Keith W. Sickendick, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain George R. Gillette, JAGC (on brief).

Before HOLDAWAY, THORNOCK and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

Pursuant to his negotiated pleas, appellant was found guilty of making and uttering worthless checks (four specifications) totaling over $8,000.00 in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a (1982). An officer and enlisted panel sentenced appellant to a dishonorable discharge, confinement for thirty months and forfeiture of $500.00 pay per month for thirty months. The convening authority, consistent with the pretrial agreement, reduced the term of confinement and forfeitures to twenty-four months and otherwise approved the sentence.

Appellant alleges personally and through counsel that the military judge abused his discretion by denying two defense challenges for cause. We disagree.

Prior to the beginning of individual *vior dire*, Lieutenant Colonel (LTC) G requested to make a statement out of the hearing of the other court members. Lieutenant Colonel G revealed that, in his official capacity, he had come across appellant's name in a case regarding civilian misconduct. Lieutenant Colonel G stated that appellant had apparently rented a television and VCR using his military identification (ID) card and had later given these items to a civilian couple. Such conduct by appellant was an abuse of his ID card privileges. Lieutenant Colonel G had not come into contact with appellant, but was familiar with the facts of the alleged incident. In addition, as the Director of Personnel and Community Activities (DPCA), LTC G took a personal as well as a professional interest in trying to reduce the number of bad checks that were written, emphasizing the need to educate soldiers regarding proper banking procedures.[1] In response to questioning by the military judge, LTC G said he felt he could make a determination regarding sentence based solely upon the evidence admitted before the court.

Another court member, Master Sergeant (MSG) C, in his capacity as the noncommissioned officer (NCO) in charge of the Finance Office, supervised the section responsible for securing reimbursement from soldiers who uttered bad checks to the Army and Air Force Exchange Service. Additionally, he had a working relationship with Major (MAJ) G, Commander of the 59th Finance Support Unit, who endorsed his enlisted evaluation reports. Major G was going to be called as a government witness to testify regarding the passing on of costs when bad checks could not be collected. Master Sergeant C stated that he felt no qualms about disagreeing with MAJ G and firmly believed that MAJ G would not hold any differences of opinion against him.

---

1. Lieutenant Colonel G stated he thought it was "very important that [soldiers] receive training on how to write checks and maintain their checkbooks and things of that nature," and he "certainly" could understand how some soldiers got into trouble when using personal checking accounts. These statements, rather than indicating a predilection on the part of LTC G to impose a harsh sentence because appellant uttered worthless checks, appear to indicate just the opposite.

Defense counsel challenged LTC G for cause on the grounds of his knowledge of appellant's uncharged misconduct and his personal interest in bad check cases. Defense counsel also challenged MSG C due to his expertise in the area of bad check collections and his duty relationship with MAJ G, the witness to be called by the government. In denying the challenges, the military judge noted LTC G's demeanor and candor in voluntarily disclosing his personal knowledge, the lack of any subjective cues by MSG C indicating that he would be other than objective regarding MAJ G's testimony, and the technical nature of MAJ G's probable testimony. Defense counsel peremptorily struck MSG C without stating that any other member would have been stricken in the wake of the military judge's denials of the challenges for cause.[2]

 Military judges should be liberal in granting challenges for cause. *United States v. Reynolds*, 23 M.J. 292 (C.M.A. 1987); *United States v. Smart*, 21 M.J. 15, 21 (C.M.A.1985); *United States v. Moyar*, 24 M.J. 635, 638–39 (A.C.M.R.1987). This mandate does not and should not require all such challenges be granted. In the case *sub judice*, the military judge had ample opportunity to observe both LTC G and MSG C; moreover, he asked both of them questions regarding the areas of sensitivity brought out in *voir dire* to determine whether there was any risk of prejudice to appellant, and he explained with specificity the rationale for his denial of both challenges. I find no abuse of discretion in the military judge's denial of the defense chal-

lenges for cause.[3] *See United States v. Smith*, 25 M.J. 785, 787–88 (A.C.M.R.1988).

Accordingly, the findings of guilty and the sentence are affirmed.

HOLDAWAY, Chief Judge, concurring in the result:

I concur in the result. The holding of *United States v. Reynolds*, the leading case cited in the majority opinion, states that, "The question of bias 'is essentially one of credibility, and therefore largely one of demeanor.' Due to his superior position, the military judge's determination of bias is entitled to great deference on appeal *and will not be reversed absent a clear abuse of discretion*." 23 M.J. at 294 (citation omitted; emphasis added). In this case, the military judge observed the demeanor of the challenged members and found them credible when they said they would make a fair judgment in this case. When an officer in the United States Army solemnly states that he will disregard an *allegation* of misconduct of which he was aware and decide a fair sentence based solely on the evidence in court, his word should not lightly be disregarded.[4] I would disregard such an affirmation only where there are objective facts casting doubt on the court member's credibility or where the facts known to him were of such a nature that a reasonable person could not be expected to disregard them. Viewed in this light, there is no basis on which to doubt the credibility of LTC G.[5] Thus it follows, ineluctably, that the military judge was well within his dis-

---

2. Technically speaking, defense counsel's phrasing of her peremptory challenge may not have been sufficient to preserve the issue under Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 912(f)(4). In this instance, however, I am persuaded by Senior Judge Thornock's eminently sensible analysis that waiver does not apply (see Thornock, S.J., concurring in part and dissenting in part, *infra*).

3. "Although military judges have broad discretion in passing on challenges, they must exercise that discretion ever mindful of 'the mandate for liberality' ..., which results in a lower 'threshold for clear abuse of discretion in denying a challenge.'" *Smith*, 25 M.J. at 785, 787 (citations omitted).

4. I reject entirely any suggestions that in his role as DPCA, LTC G's concern for bad check offenses would render him ineligible to sit. I assume that any officer or NCO in the Army would wish to reduce the incidence of bad checks on the part of soldiers.

5. In the course of a trial, court members are often cautioned to disregard matters of uncharged misconduct. In all but quite unusual cases, we are willing to assume they will do so. It is beyond me why we do not accord LTC G the same presumption, particularly where he affirmatively states he will do so.

cretion in denying the challenge for cause against LTC G.[6]

As to the challenge against MSG C, I would apply the same test. A solemn assurance by a senior NCO that a command relationship with a witness will not affect his independence in a case is entitled to great weight. There are no facts that would cast any doubt whatsoever on MSG C's credibility. Furthermore, the testimony of the witness was purely technical in character, having to do with who bears the costs of bad checks. His testimony was not challenged; his credibility was not in issue; he had no "stake" in the case apart from one all citizens have of the costs of crime. Under the circumstances, it is difficult to see that MSG C's relationship with the witness could have had any influence at all on MSG C's decision. The military judge's denial of the challenge was therefore well within his discretion.

Finally, I see no reason to abandon the waiver rule set forth in Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 912(g)(2). Judicial erosion of clear and unambiguous procedural rules when the appellate decision is based on little more than vague, subjective concepts of "fairness" is, in my view, pernicious.

THORNOCK, Senior Judge, concurring in part and dissenting in part:

I dissent as to affirming the sentence. In my view the military judge should have granted the challenges for cause, especially against Lieutenant Colonel (LTC) G. His knowledge of appellant's involvement in uncharged misconduct and his personal and professional interest in the "bad check" problem disqualified him from objectivity as to sentence.

The holding of United States v. Reynolds, 23 M.J. 292 (C.M.A.1987) enjoins military judge's to be liberal in granting challenges. In United States v. Moyar, 24 M.J. 635, 639 (A.C.M.R.1987), this court stated:

What is being tested is whether the trial judge adhered to the mandate to be liberal in granting challenges for cause—a judicial policy designed to compensate for the fact that a military defendant has only a single peremptory challenge. (Citation omitted.)

In this context it is our view that the threshold for clear abuse of discretion in denying a challenge for cause is lower than has heretofore been articulated.... If trial judge decisions on challenges are to be given deference at the appellate level, those decisions must more closely adhere to the spirit and intent of the liberal grant mandate."

In the instant case, I do not find adherence to the noted "liberal mandate."

As to the issue of waiver, the trial defense counsel was faced with a dilemma in the instant case. She had entered two challenges for cause and could only strike one member peremptorily. She exercised that peremptory challenge and could do no more. We decline to invoke waiver here by insisting that the defense counsel recite the "but for" rule, that is, "but for" the denial of the challenge for cause, someone else would have been peremptorily challenged. Such a demand elevates form over substance and is reminiscent of the old common law requirement to note "exception" to trial judges' rulings in order to preserve error. Such formal and stylized requirements are not a part of modern military trial practice. The trial defense counsel did what was necessary to preserve the error by peremptorily challenging MSG C, one of the members she had unsuccessfully challenged for cause.

Moreover, because of the multiple reasons articulated by the defense counsel for each challenge for cause, this case presents *cumulative* circumstances which, when taken together, cast doubt on the "legality, fairness and impartiality" of the proceed-

---

**6.** When this court finds that a trial judge did not abuse his discretion, it does *not* always follow that we agreed with his ruling or would have ruled as he did. Rather, our trial judges are given broad latitude to make decisions, so long as they are reasonably based upon the evidence before them. It would not do to pay mere lip service to such an important judicial concept by limiting the judge's "discretion" to those instances in which this court agrees with him.

ings. *Moyar*, 24 M.J. at 639. From the record before us, I cannot find, as did the Supreme Court, that the "error did not deprive [appellant] of an impartial jury." *Ross v. Oklahoma,* — U.S. —, —, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). Unlike my brothers, I also do not feel the result of the case fulfills the role cast for the appellate courts by Chief Judge Everett in *Smart* to "assure that military accused are tried by court members who are unbiased as to findings and *sentence." United States v. Smart,* 21 M.J. 15, 19 (C.M.A. 1985) (emphasis added).

Under the totality of circumstances, a liberal granting of challenges for cause was necessary. Not to do so, in my view, was error.[1]

I would affirm the findings but disapprove the sentence and return the case for a rehearing on the sentence.

1. Although I would find the military judge erred to the appellant's prejudice by not granting the challenge for cause against LTC G, I do not imply that the military judge did not consider the issue before ruling. He asked questions of the challenged members and explained to some degree his ruling. However, those points notwithstanding, under the totality of circumstances in this case the challenge against at least LTC G should have been granted. The refusal to apply the mandated doctrine of liberality as to challenges violated the spirit and legal basis for that doctrine. In my view, military judges should pay more than lip service to the liberality mandate. Such action places the current system at risk to a more stringent judicial or legislative "fix" that may further "civilianize" the military justice system, and thus further erode a distinctive and necessary part of a convening authority's flexibility to appoint members. For our system to have a chance to function in a combat environment, the present flexibility should not be eroded further. Absent a patently frivolous challenge, the administrative inconvenience necessary to replace a challenged court member in peacetime rarely rises to a military exigency that demands the challenge be denied.