UNITED STATES

v.

**Miguel A. CHOLLET, Subsistence Specialist Third Class, U.S. Coast Guard.**

CGCMS 23952.
Docket No. 936.

U.S. Coast Guard Court of
Military Review.

18 June 1990.

Trial Counsel: LCDR Joseph F. Ahern, USCG.

Civilian Defense Counsel: Luis R. Rivera, Esquire.

Detailed Defense Counsel: LT Mark R.B. Stewart, USCGR.

Appellate Government Counsel: CDR Richard T. Buckingham, USCG.

Appellate Defense Counsel: LCDR James Collin, USCG.

Before Panel Two, BAUM, BARRY and GRACE, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by a Special Court–Martial consisting of officer members. Despite his pleas of not guilty to the charge and specification, he was convicted of one specification of wrongful cocaine use in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. Thereafter, the court sentenced appellant to be discharged from the United States Coast Guard with a bad conduct discharge, to be reduced to pay-grade E–1 and to be reprimanded. Contemporaneously, the court recommended that the convening authority reduce the discharge to one with "less than honorable conditions." The convening authority, however, approved the sentence as adjudged.

Appellant has assigned three errors before this Court:

### I

THAT THE MILITARY JUDGE ERRED IN IGNORING THE MEMBERS VERDICT AND, DESPITE CLARIFICATION BY THE PRESIDENT OF THE COURT–MARTIAL, IMPROPERLY INSTRUCTED THE MEMBERS TO SENTENCE APPELLANT TO A BAD CONDUCT DISCHARGE.

### II

THAT APPELLANT'S DETAILED DEFENSE COUNSEL DID NOT INFORM HIM OF A CONFLICT OF INTEREST REGARDING HIS RELATIONSHIP WITH THE CONVENING AUTHORITY AND THAT UNWAIVED CONFLICT RESULTED IN PREJUDICIAL ERROR.

### III

THAT THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING THE DEFENSE CHALLENGE FOR CAUSE AGAINST ONE OF THE COURT MEMBERS.

These assignments have been briefed and orally argued and the case is now

ready for decision. The assignments will be addressed in reverse order.

## Assignment of Error III

Appellant has cited several reasons why one of the court members, a Coast Guard Commander, should have been disqualified from sitting, after challenge for cause: (1) the convening authority was the court member's second line supervisor and reporting officer on his officer evaluation report; (2) the court member, in turn, was supervisor of another court member and responsible for preparing that officer's evaluation report; (3) the court member, as acting executive officer of appellant's command when appellant's urinalysis sample was returned, knew the results of that urinalysis; and (4) the court member, in addition to all other asserted disqualifying factors, had a fairly close personal relationship with the convening authority, as next door neighbor, which was exemplified by the disclosure that the convening authority's wife was baby sitting with the court member's son at the very time of voir dire examination.

Appellant acknowledges that perhaps any one of these four reasons alone should not be grounds for challenging a member for cause, but contends that taken together they inject much more than substantial doubt as to the fairness and impartiality of the member, despite the member's assurances to the contrary. In this regard, the commander, in response to direct queries, expressly disclaimed a personal interest in the outcome of the trial and asserted his impartiality. Voir dire questioning revealed that the extent of the member's prior knowledge of appellant's urinalysis was only that the results had come back positive, a fact readily apparent from the charges alone. Moreover, the court member vowed that he would base his decision in the case solely on matters properly presented to the court for consideration. The member also indicated that he had no problem disagreeing with the convening authority, stating, "I have had to look Captain Caster in the eye a lot of times and tell him things that he doesn't want to hear

and I have never had a problem doing that." Record of Trial at 40.

■ Government counsel contends that when it comes to challenges for cause against court members, the question of bias is essentially one of credibility and, therefore, largely one of demeanor. Accordingly, citing *U.S. v. Reynolds*, 23 MJ 292, 294 (CMA 1987) and *U.S. v. Carns*, 27 MJ 820, 822 (ACMR 1988), he argues that due to the trial judge's ability to assess first hand such credibility and demeanor, the judge's determination is entitled to great deference on appeal and should not be reversed absent a clear abuse of discretion. We agree. As in *Reynolds, supra*, the member's responses indicating he would keep an open mind and would not be influenced by his association with the convening authority have convinced us that the military judge did not abuse his discretion in denying the defense challenge for cause. In upholding the judge's ruling on this matter, however, we register our concurrence with the following views of Chief Judge Holdaway, as expressed in his separate opinion in *U.S. v. Carns, supra:*

> When this court finds that a trial judge did not abuse his discretion, it does *not* always follow that we agreed with his ruling or would have ruled as he did. Rather, our trial judges are given broad latitude to make decisions, so long as they are reasonably based upon the evidence before them. It would not do to pay mere lip service to such an important judicial concept by limiting the judge's "discretion" to those instances in which this court agrees with him.

27 MJ 820, 823, n. 6

We believe Judge Cox's advice in *U.S. v. Reynolds, supra*, also bears repeating: "[w]e ... encourage liberality in ruling on challenges for cause. Failure to heed this exhortation only results in the creation of needless appellate issues." *U.S. v. Reynolds, supra* at 294.

■ Finally, we take note of the fact that appellant exercised his peremptory challenge of the commander in question. As a result, that officer did not sit as a member in this case. The government

points out that there is authority for the position that use of the peremptory challenge cures any possible error from improper denial of a challenge for cause. *U.S. v. Harris,* 13 MJ 288 (CMA 1982); *U.S. v. Jobson,* 28 MJ 844, 848 (AFCMR 1989), *certif. filed,* 28 MJ 350 (argued 13 FEB 90, decision pending); *U.S. v. Davenport,* 14 MJ 547 (ACMR 1982); *U.S. v. Dawdy,* 17 MJ 523, 525 (AFCMR 1983). Accordingly, even if the judge were deemed to have abused his discretion, no prejudice resulted.

For all of these reasons, appellant's assertion in Assignment of Error III that the military judge erred to the substantial prejudice of appellant is rejected.

## Assignment of Error II

█ In Assignment of Error II, appellant contends that there was a conflict of interest resulting from the detailed defense counsel's relationship with the ultimate convening authority and that since there was no full disclosure of that relationship there was no voluntary intelligent waiver of the conflict. The facts on which appellant bases this argument are that Captain Paul Blayney, USCG, who detailed the defense counsel to this case in his capacity as Chief of the Legal Division, Maintenance and Logistics Command, Atlantic, ultimately took convening authority action on the sentence after relieving the officer who referred charges to trial, Commander, Coast Guard Section, Greater Antilles, San Juan, Puerto Rico. The trial in this case was completed and the officer evaluation report on detailed defense counsel was signed by Captain Blayney before he reported to his new duty assignment in Puerto Rico. Several months later, the record of trial was authenticated and Captain Blayney, as the new Commander, Coast Guard Section, Greater Antilles, took action on that record.

We discern no conflict of interest arising from these facts, either actual, perceived or apparent. That fact that Captain Blayney was in receipt of permanent change of station orders to his new assignment at the time of trial and, later, when he signed

counsel's evaluation does not alter our conclusion that there was no conflict. Accordingly, there was no need to inform the accused of these matters or to obtain a waiver from the accused. The assignment is deemed to be without merit.

## Assignment of Error I

[7] In his first assignment, appellant asserts that the announced sentence of the court by the president and his subsequent colloquy with the judge make it clear that the president and the other court members did not want to award appellant a sentence containing the strictures a bad conduct discharge would impose. Appellant contends that the military judge would not accept what the president of the court-martial was saying, "and in effect, subtly bullied the president and the other members of the panel into a sentence that would fit within the military judge's own preconceived notions of what was proper." Brief for Appellant at 5, 6. The portion of the announced sentence prompting this assignment was: "[t]o be discharged from the service with a bad conduct discharge with a recommendation to the convening authority to reduce the discharge to less than honorable conditions." Record of Trial at 323. Subsequently, after a bench conference with counsel, the following colloquy between the judge and the president ensued:

MJ: We need to clarify something for the record. Obviously you have awarded a bad conduct discharge which is the only type of discharge which this court can award. As I indicated in the instructions before, you may not impose a sentence more severe than what you would like to impose in hope that the convening authority will reduce it. I view your recommendation as a recommendation for clemency with regard to the bad conduct discharge. Is that correct?

PRES: Can I say something other than; Yes.

MJ: Yes.

PRES: We feel that he should not be in the Coast Guard. We have taken the only avenue that we can take to get him out of the Coast Guard. However, we

also feel that worse than honorable conditions—if we had a choice it would be just to get him out of the Coast Guard under less than honorable conditions, but we will do what is necessary to get him out of the Coast Guard.

MJ: Would I be correct in saying that you are recommending to the convening authority that he not approve the bad conduct discharge, but initiate administrative action that would get him out with a characterization of discharge more favorable to the defendant?

[Pause.]

PRES: Our desires of awarding the sentence are—and the discharge as I said earlier is to remove him from the service. As part of that removable [sic] from the service the bad conduct discharge impose [sic] much more of a punishment than just removable [sic] from the service. It affects your ability to put yourself in the future job capacity and so forth, which is what we were—the long term effect we would like to reduce.

MJ: The only way to do that is for the convening authority not to approve it. You have awarded a bad conduct discharge. It can be suspended by the convening authority or it can be disapproved by the convening authority. I take your comments to mean that you are making a recommendation that he do one or the other, which is the only thing that he can do with regard to your discharge and then initiate administrative actions. Now, are you impeaching your verdict? Is a bad conduct discharge what you want to impose in this case?

[Pause.]

PRES: The administrative procedures to discharge a person—

MJ: They are totally separate than this proceedings. [sic] As I indicated in the instructions they should have not been considered. You may make a recommendation regarding clemency. I taking [sic] your recommendation as a [sic] clemency.

PRES: It is a [sic] clemency.

MJ: So, you are making a recommendation to the convening authority that he exercise clemency with regard to the bad conduct discharge, and pursue it in another manner. To pursue an administrative discharge in lieu of the punitive discharge which you have just awarded. You have awarded a punitive discharge. Only a court-martial may award a punitive discharge, an administrative board may not. What you are recommending is that he consider your recommendation and pursue an administration action and aware [sic] a discharge characterized other than by [sic] punitive. Is that what you are recommending?

PRES: Yes, Your Honor.

MJ: Is that the opinion of all three members?

MEMBERS: [Each member responded individually and in the affirmative.]

MJ: That is what will be in the record then.

Record of Trial at 325–326.

We believe the military judge erred in proceeding in this manner rather than instructing the court on its various options and then allowing the members to resolve the matter without ambiguity in closed session. In that regard, one of the options open to the court was to award a sentence which did not include a punitive discharge. That, in fact, was the only option open if the court did not believe the strictures of a punitive discharge were appropriate in this case—as seems to be indicated by the president's initial responses to the judge. The rejoinder by the judge, however, was to tell the president that the only way to do what the court wanted was to rely on the convening authority to disapprove the bad conduct discharge. That statement was incorrect. The court could and should have reconsidered its sentence with proper instructions on the various options available and then should have imposed a sentence without a discharge if it considered a bad conduct discharge inappropriate. If that course had been taken, we might not be confronted now with a record that is still ambiguous as to sentence.

█ As indicated, it appears that the court did not want to impose a bad conduct discharge. Rather than return the record

for a rehearing on sentence to clear up this matter, we are disposed to approve a sentence which does not include a punitive discharge and thereby terminate this matter in the interest of judicial economy.

██ Other shortcomings in the record convince us of the correctness of this course. As was said by this Court in *U.S. v. Rowser,* 2 MJ 1160, 1161 (CGCMR 1975),[1] "a bad conduct discharge may not be approved unless it is supported by a record of trial which is both complete and verbatim." While not assigned as error, there are significant gaps in the record where the reporter simply filled in the blanks with the word "inaudible". We believe some of the missing portions amount to substantial omissions leaving us with a record that is not verbatim and, thus, will not support a bad conduct discharge. *See U.S. v. Box-dale,* 22 USCMA 414 (1973). Two examples from the many such omissions, suffice to underscore the substantial nature of these gaps in the record. Five minutes after the court closed for sentencing, it reopened to ask the judge a question. That question and the subsequent bench conference were as follows:

MJ: I understand that you have a question.

PRES: Yes, sir. We do. We were unclear on whether we can apply the reduction to the discharge status. In other words can we recommend a discharge other than a bad conduct discharge.

MJ: [To all counsels:] You want to come here.

[All counsels approach the judges bench.]

MJ: All that I am going to say is that the only kind of discharge that they can consider is the BCD. [*Inaudible.*] Any type of administrative action is beyond the realm of this court. [Emphasis added.]

TC: That is true.

MJ: [*Inaudible.*] [Emphasis added.]

TC: Yes, sir.

CDC: Yes, sir.

[Counsels returns [sic] to their seats at their respective tables.]

Record of Trial at 321–322.

Thereafter, the judge answered the president's question and the court retired for further deliberation. When it reopened and announced the sentence with recommendation to the convening authority to reduce the severity of the discharge, the judge called another bench conference, which was recounted as follows:

MJ: [To counsels:] Okay. Now, why don't you come up here.

[All counsels complies. [sic]]

MJ: It is really a recommendation for clemency.

TC: They were instructed not to adjudge a sentence [*inaudible*] in administrative measures. [Emphasis added.]

DC: By less than honorable, I assume they mean a OTH.

TC: Well, I think that is what it shows.

MJ: I am looking at administrative process. We will get that on the records as to what they really voted for.

CDC: But, just a minutes. [sic] Isn't the reprimand to the top—I haven't seen the sheet—

MJ: You just read it.

CDC: Yes, but the first line—

MJ: We are talking about the recommendation for other than honorable. That is an administrative procedure.

CDC: Okay, but I think they made a mistake, because if they vote for one of the punishments and it wasn't on the top and said that that is the punishment that they are going to give and they decided that it was reprimand and [*inaudible*] and stay with that one. [Emphasis added.]

MJ: They can vote for any number of punishments. They said reprimand, reduction, and BCD. That is a valid punishment.

CDC: [*Inaudible.*] inconsistent here. [Emphasis added.]

---

**1.** *U.S. v. Rowser,* a Coast Guard opinion, is incorrectly referred to in 2 MJ 1160 as a U.S.

Navy Court of Military Review decision.

TC: Well, I don't see that that is true, but I think you ought to voir dire them a little bit on—

MJ: I am sorry?

TC: Just make sure that its [*inaudible.*] [Emphasis added.]

[All counsels return to their seats at their respective tables.]

Record of Trial at 324.

 The unrecorded portions of the bench conferences that are labeled "inaudible" leave us without the means to determine exactly what the judge said and what was agreed to by counsel. This was a critical aspect of the sentencing phase of trial and bears directly on the third assignment of error. We believe that these inaudible portions were substantial omissions which, along with other non-transcriptions, render the record non-verbatim.[2] Since a verbatim record is not required for a special court-martial without a bad conduct discharge, approval of a sentence which does not include a discharge will rectify the matter. Such action will also resolve any ambiguities with respect to the sentence raised by the Court's recommendation to the convening authority and the president's answers to the judge. As a result, we will commute the discharge to the lesser sentence of forfeiture of pay.

Accordingly, the findings of guilty as approved below are affirmed and the bad conduct discharge is commuted to forfeiture of $466.00 pay per month for six months. The sentence of a reprimand, reduction to pay grade E–1, and forfeiture of $466.00 pay per month for six months is affirmed.

Judge GRACE concurs.

BARRY, Judge (concurring).

Whether the omissions in the record are "substantial" omissions rendering the record non-verbatim is a question not raised or argued by counsel. When, as here, the omissions affect a portion of the record which document a bench conference, they would generally be deemed to be less significant than would be similar omissions in statements made by the Military Judge to the Members. While I am concerned by the number and placement of the "inaudible" portions of the record, I am not prepared to say that in this case these omissions are "substantial".

In all other respects I concur with the principal opinion and with the action taken, which is fully supported by the record, whether or not the record is deemed to be substantially verbatim.

---

**2.** *See U.S. v. BeLarge,* 19 USCMA 91, 41 CMR 91 (1969), where the Court of Military Appeals held that a bad conduct discharge could not be approved because the record did not reflect what took place during a five-minute side-bar conference between the trial counsel, defense counsel and court members discussing a point raised by trial counsel during the presentencing stage of trial.