UNITED STATES, Appellee,

v.

Sergeant Todd J. KEENAN, 042–64–0038, United States Army, Appellant.

ACMR 9300619.

U.S. Army Court of Military Review.

10 May 1994.

For Appellant: Major Robin L. Hall, JAGC, Captain Thomas D. Wight, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

---

Before GRAVELLE, JOHNSTON, and WHITE, Appellate Military Judges.

## OPINION OF THE COURT

WHITE, Judge: *

The appellant was tried at Giessen, Federal Republic of Germany, in April 1993, by a general court-martial composed of officer and enlisted members. Pursuant to his pleas, he was found guilty of absence without authority terminated by apprehension, of violating a lawful general regulation pertaining to the operation of a vehicle without a license, and negligent homicide, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 934 (1988) [hereinafter UCMJ]. The court sentenced him to a dishonorable discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority, pursuant to a pretrial agreement, reduced the amount of confinement to twenty-four months but otherwise approved the sentence.

The appellant contends that the military judge erred by denying challenges for cause against Colonel (COL) Baggett and Major (MAJ) Thompson. We disagree and affirm.

### I.

After the military judge found the appellant guilty, the court members were sworn, received their preliminary instructions, were informed of the charges of which the appellant had been found guilty, and were examined on voir dire.

In his voir dire of the members, the military judge advised them as follows:

[I]t's a grounds for challenge that you have an inelastic predisposition towards the imposition of a particular punishment based solely on the nature of the crime for which the accused is to be sentenced. At this point in the trial the evidence and argument will be presented as to an appropriate punishment. I will give you instructions on sentencing, you will then close to deliberate on a sentence.

It's the duty of each member to keep an open mind and to not make a choice as to sentence until you close to deliberate.

The military judge then asked if each member of the panel could perform that duty and received affirmative responses from all members.

The military judge continued his advice and questions to the members as follows:

Again, this case involves negligent homicide, alcohol was involved in that particular offense. Some members of the panel may have strong feelings regarding the use of alcohol and driving.

Is there any member of the panel who believes so strongly right now that an appropriate sentence in this particular case must include a particular punishment such as confinement, discharge, or any other particular punishment; that he or she will be unable to follow my instruction that you must keep an open mind as to sentence, consider the full range of punishments and the evidence presented when you deliberate and vote on a sentence?

The military judge received negative responses from all members.

The trial counsel then asked whether each member would listen to all of the evidence in aggravation, as well as all of the evidence in extenuation and mitigation before deciding an appropriate punishment in the case, and all members responded in the affirmative.

During her general voir dire, the defense counsel questioned the members as follows:

In your capacity as panel members you're going to have to listen to evidence and weigh the evidence. You have the flier before you which contains the three things upon which you are to sentence Sergeant Keenan. Is there anyone, based on the flier in front of you, is there anyone that has a inelastic attitude that feels that all soldiers who are convicted of negligent homicide in which alcohol is a factor should be punitively discharged?

Is there anyone that based on that flier feels that a punitive discharge must be given?

* Judge Benjamin H. White, Jr., took final action in this case prior to his release from active duty.

The record reflects negative responses from all panel members and then notes that COL Baggett had a quizzical look. Colonel Baggett then stated, "You're asking a lot, counselor." The military judge then interposed as follows:

Let me take that one step further and go back to my original question that I asked on the issue. I've given you some instructions as to it's your duty to keep an open mind. Is any member of the panel, again, feel so strongly about this issue that they feel like they would not be able to follow that instruction and keep an open mind, consider the full range of punishments; and that will range from no punishment up to the maximum when you deliberate on a sentence?

Colonel Baggett responded as follows:

The answer is yes, I can keep an open mind. But the way the counsel phrased her question there, with regard to the punitive discharge and the nature of the charges, the fact that the accused has pled guilty to them, uh ... I pride myself on being very open minded and willing to consider all the things that are going to be presented in mitigation. I'll just leave it there.

Later during the general voir dire, COL Baggett was specifically asked whether he thought that rehabilitative potential was important in determining a sentence, and he answered that he thought it was very important. Colonel Baggett was asked whether he thought that it was possible for a soldier (referring specifically to this case) to "soldier his way back." Colonel Baggett answered, "No."

During individual voir dire, trial counsel and defense counsel questioned COL Baggett as follows:

DC: Sir, I promised you I would ask you these questions on individual voir dire. And really what I'm getting at, sir, is whether or not you can have an open attitude as to sentencing, or whether you feel that based upon the offenses before you on the flier, that you feel that you have to give a punitive discharge?

MEMBER (COL BAGGETT): No, no. I—your question to me was, do I think this soldier can soldier back from this, and I said I don't think he can. You asked Captain Mack would she consider all the ranges of potential punishments—and I will faithfully do that.

DC: You will be able to do that.

MEMBER (COL BAGGETT): Yes, I will. And that goes to what the judge charged me with to begin with, would I keep an open mind. And I will, I just don't think that in today's climate that Sergeant Keenan can survive this—I mean as a soldier. That was what I inferred from your question. And that's why I responded the way I did.

. . . .

TC: Colonel Baggett, if Captain Carlton is able to present and does present evidence that the accused can soldier his way back in the Army, would you consider that evidence in determining an appropriate sentence?

MEMBER (COL BAGGETT): Absolutely.

. . . .

DC: Sir, expounding on you think in today's environment that Sergeant Keenan would not be able to survive it. Can you elaborate on that, sir.

MEMBER (COL BAGGETT): I meant professionally. I just—I tell you, we are separating great soldiers today, that in any other time in my 26 years in the military would be highly valued employees of this organization, and they're being asked to depart for the slightest blemish on their record; weight, PT test, Article 15's that are 10 or 15 years old, when they were very junior soldiers, and it escalates from there. You don't have to put too many things wrong—I mean, we are reaching way down to separate people who are just doing a great job for us. And as I look at the charge sheet to which Sergeant Keenan has pled guilty, I just—well, here's a man who was AWOL for six or seven months, he's finally brought back under military control after killing a friend in a car, while under the influence of alcohol while he's driving it, without a license ... [laughing]. Not a chance would be my response to that.

Major Thompson was then questioned by the military judge, trial counsel, and defense counsel on individual voir dire as follows:

DC: Major Thompson, the evidence in this case is going to reveal the use of alcohol and a resulting car accident. Can you enlighten the court as to whether or not you would find the use of alcohol or those circumstances so offensive as to not be able to be impartial? What is your position?

MEMBER (MAJ THOMPSON): Dealing with a noncommissioned officer who is charged with the responsibility of setting the example for subordinates, who has already pleaded guilty, I would find myself predisposed to be tougher in sentencing.

. . . .

TC: Major Thompson, would you be able to follow the judge's instructions as to considering all of the evidence in the case and keeping an open mind, and not making any predetermined judgmental sentence before all the evidence has been heard?

MEMBER (MAJ THOMPSON): As I just stated, and as I said previously, I can listen objectively, but based on the fact that we are dealing with a noncommissioned officer, a leader, that I am predisposed just from the years of service, to be harsher on somebody like that than I would be if we were talking about a private or specialist.

. . . .

MJ: Major Thompson, when you say you would be tougher, would it be fair to say then that you would hold an NCO to a higher standard than you would a junior enlisted? Is that basically what we're talking about?

MEMBER (MAJ THOMPSON): Yes, sir.

At the conclusion of the voir dire, both trial counsel and defense counsel challenged COL Baggett and MAJ Thompson for cause.

The military judge denied counsel's challenges for cause as to COL Baggett ruling as follows:

MJ: The challenge for cause to Colonel Baggett is denied. I didn't hear anything he said that indicated he had a predisposition towards a punitive discharge.

. . . .

MJ: The challenge for cause to Colonel Baggett is denied. He expressed an opinion that with a conviction for these offenses Sergeant Keenan probably did not have a future career in the Army based upon the type of soldiers that are being asked to leave the Army now. He didn't say anything to indicate that he was predisposed to this court adjudging punitive discharges. He was very—you use the term opinionated, very—I would say very candid in his responses. That challenge is denied.

The military judge also denied the challenge for cause against MAJ Thompson, thereby rejecting as a ground that MAJ Thompson held noncommissioned officers to a higher standard than enlisted soldiers.

Defense counsel then invoked the defense's peremptory challenge against COL Baggett, stating that, "but for the denial of the challenge for cause against Major Thompson [sic] the defense would have struck MAJ Thompson."

## II.

Military judges have repeatedly been admonished by this court and the Court of Military Appeals to be liberal in granting challenges for cause. *United States v. McLaren*, 38 M.J. 112, 118 (C.M.A.1993); *United States v. Moyar*, 24 M.J. 635, 638 (A.C.M.R.1987). We reiterate once again that admonition, but at the same time we recognize that liberality need not encompass challenges involving mere speculation and/or clearly having no merit. See *United States v. Tippit*, 9 M.J. 106, 107 (C.M.A.1980). The critical question in all causal challenge issues is whether the military judge clearly abused his or her discretion in denying the challenge. *McLaren*, 38 M.J. 112. The standards regarding challenges for military courts are set out in *United States v. White*, 36 M.J. 284 (C.M.A.1993) as follows: "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except

for a clear abuse of discretion in applying the liberal-grant mandate." *Id.* at 287.

■ Unless it is apparent from the record of voir dire that a court member has a closed mind about the case he is to try, denial by the military judge of a challenge for cause should not be reversed. "A trial court's standard is to grant challenges for cause liberally. An appellate court's standard is to overturn a military judge's ruling on a challenge for cause only for a clear abuse of discretion." *Id.* Abuse of discretion exists whenever in the exercise of his or her discretion, the military judge exceeds the bounds of reason, all of the circumstances before him or her being considered. *Id.* at 290.

In a concurring opinion in *United States v. Carns,* 27 M.J. 820, 822 (A.C.M.R.1988), then Chief Judge Holdaway wisely pointed out that when this court finds that a trial judge did not abuse his discretion, it does not always follow that we agree with his or her ruling or would have ruled as he or she did. Rather, military trial judges are given broad latitude to make decisions, so long as they are reasonably based upon the evidence before them. As Judge Holdaway so aptly put it, such an important judicial concept should not be diminished by limiting the trial judge's "discretion" to those instances in which this court agrees with him or her. This is particularly true in this case where the military judge was in a superior position to assess bias in terms of demeanor and ultimately the credibility of the challenged members.

■ In this case, the military judge observed the demeanor of the challenged members and found them credible when they said they would make a fair judgment in this case. When an officer in the United States Army solemnly states that he can decide a fair sentence based solely on the evidence in court, his word should not be lightly disregarded. There are no objective facts casting doubt on the court members' credibility nor were there facts known to the members of such a nature that a reasonable person could not be expected to disregard in deriving a decision on punishment. Thus, it follows, that the military judge was well within his discretion in denying the challenges for cause

against COL Baggett and MAJ Thompson in this case.

Appellant's sole reason for challenging COL Baggett appears to be based on the candid statement of COL Baggett that the appellant could not soldier his way back into the Army considering the charges of which he had been found guilty. The appellant equates this statement to an expression of an inelastic attitude on the part of COL Baggett towards the imposition of a particular punishment in this case, a punitive discharge. We find this not to be the case; Col Baggett did not demonstrate an inelastic sentencing attitude or a predisposition toward a punitive discharge. He was merely stating a fact well known to all service soldiers in the Army in 1993, which was and is, that with the drawdown of personnel and the deactivation of units in the Army, one such as the appellant with such a blemish on his record had no hope of making a career out of service in the Army. More importantly, on at least five occasions during voir dire, COL Baggett indicated by his responses that he would keep an open mind and not determine an appropriate sentence until the court closed for deliberations.

Appellate can not and does not point to any evidence raising "substantial doubt as to [the] legality, fairness, and impartiality" of COL Baggett's participation as a member of the court-martial. Rule for Courts–Martial 912(f)(1)(N) [hereinafter R.C.M.]. In our independent review of the record we have found none. We hold that the military judge did not abuse his discretion in denying the challenge for cause against COL Baggett.

■ As to the challenge for cause against MAJ Thompson, we find that the appellant waived his right of further consideration of the challenge upon review by this court. R.C.M. 912(f)(4). Although defense counsel peremptorily challenged COL Baggett and stated that but for the denial of the challenge for cause against COL Baggett, she would have peremptorily challenged MAJ Thompson, she did not state on the record that but for the denial of the challenge for cause against MAJ Thompson, she would have peremptorily challenged another member. The rule requires that a party peremptorily challenging a member it has unsuccessfully challenged for cause state that it would have

peremptorily challenged another member in order to preserve the issue for appeal. *United States v. Jobson,* 31 M.J. 117, 120–21 (C.M.A.1990).

Nonetheless, we do note that MAJ Thompson's tougher standard for noncommissioned officers does not, without more, demonstrate an inelastic sentencing attitude or a predisposition toward a punitive discharge. *United States v. Wood,* 13 U.S.C.M.A. 217, 32 C.M.R. 217, 1962 WL 4482 (1962). Clearly the appellant's rank could appropriately be considered by the court members either in aggravation or in mitigation as the facts merit. Our independent review of the record reveals no abuse of discretion on the part of the military judge in denying the challenge for cause as to MAJ Thompson. We hold the military judge did not err.

Finally, we should point out that this case is before this court in the unusual posture where both the trial and defense counsel challenged the same two members for cause for the same reasons. Some would criticize the military judge for not avoiding needless appellate issues and the attendant risk of reversal on appeal. This we will not do in this case for we must avoid any suggestion that the military judge must for the sake of expediency abdicate his sworn duty to preside over the court-martial and when required, to determine facts and apply the law in deciding issues such as in this case.

We have considered the remaining assertion of error, that is, the contention that the court-martial in this case lacked jurisdiction because the military judge was designated in violation of the Appointments Clause of the Constitution, and the assertion of error raised personally by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them also to be without merit. *Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

The findings of guilty and the sentence are affirmed.

Senior Judge GRAVELLE and Judge JOHNSTON concur.